BOSTON & FAIRHAVEN IRON WORKS *vs.* CHARLES MONTAGUE & another.

CHARLES MONTAGUE & another *vs.* BOSTON & FAIRHAVEN IRON WORKS.

A bill in equity will not lie to foreclose a mortgage of patent rights which the mortgagee already holds by an assignment absolute in form from the mortgagor as a part of the transaction of the mortgage; but will lie to redeem them from it, since their reconveyance by the mortgagee is necessary to reinstate the mortgagor in their possession.

If a mortgagee of personal property refuses to render an account without which the mortgagor cannot ascertain the amount due so as to make payment or tender for the redemption of the property, relief will be afforded to the mortgagor in equity.

TWO BILLS IN EQUITY; the first, filed in this county January 4, 1870, by the mortgagees against the mortgagors, to foreclose a mortgage of personal property; the second, filed in Suffolk May 17, 1870, by the mortgagors against the mortgagees, for an account and to redeem the property from the same mortgage. To each the defendants demurred, on the ground that the plaintiffs had a plain, adequate and complete remedy at law; and the material facts appeared as follows:

On February 20, 1866, Charles Montague and Charles W. L. Montague, partners under the firm of Montague & Company, were owing $8000 to the Boston & Fairhaven Iron Works, a corporation which had a foundry at Fairhaven. The debt had been incurred in the manufacture, at the foundry, of certain printing presses and paper-cutters for Montague & Company, under letters patent of the United States which were owned by that firm, who also owned certain patterns and drafts, which were lying in the foundry and were used in casting the machines.

On the day named, the parties signed and sealed articles of agreement, of that date, in which it was stipulated that the corporation should continue to manufacture and deliver presses and cutters to the order of the firm, under the letters patent, for a price per machine to be graduated by the amount of material and labor used in its construction, and to be varied from time to time according to the current rates for such material and labor; that the firm should, immediately on their sale of any such machine, pay the said price of it to the corporation, and also pay to the corporation all surplus of profit accruing from such sales until their debt to the corporation should be extinguished; that these articles should be binding for three years, unless sooner annulled by mutual consent; that the firm should not employ any other than the corporation to make such machines during the three years; that, in consideration of the debt of $8000 owed by the firm to the corporation, and of the probability, according to the foregoing terms of agreement, that the firm might continue in debt to the corporation for an indefinite period, and of one dollar paid by the corporation, therefore the firm granted and conveyed to the corporation, and its assigns, the said patterns and drafts, and the said letters patent, " provided nevertheless that if the said Montague & Company shall well and truly pay or cause to be paid all the legal demands which the said Boston & Fairhaven Iron Works now have or may have, resulting from the foregoing contract, then this conveyance on the part of Montague & Company to the Boston & Fairhaven Iron Works shall be void, otherwise of full force and effect;" and finally that "it is fully understood and agreed between the parties to this contract, that,

when the said Montague & Company shall cancel their indebtedness to the Boston .& Fairhaven Iron Works, then the above named patent rights shall be reconveyed." An assignment of the patent rights by a separate instrument, absolute in form, was made to the corporation as a part of the transaction, and was duly recorded.

The parties conducted business for the specified term of three years under this agreement; and continued to deal with one another in the manufacture and sale of the machines for some time afterwards.

The bill of the Boston & Fairhaven Iron Works alleged that since the date of the agreement the debt of Montague & Company to the corporation had increased, until on November 1, 1869, it amounted to $26,833, which sum was still due, with interest from that date.

The bill of Montague & Company alleged that they had often demanded but never been able to obtain from the corporation any intelligible statement of its accounts with them.

Both cases were reserved on bill and demurrer for the determination of the full court, and argued together at Boston in January 1871 before all the judges but *Colt*, J.

*T. M. Stetson*, for the mortgagees.

*E. H. Bennett & E. P. Brown*, for the mortgagors.

MORTON, J. The equity jurisdiction of this court is created and limited by statute. The statutes provide that the court may hear and determine in equity, in cases where the parties have not a plain, adequate and complete remedy at the common law, " suits for the redemption of mortgages, or to foreclose the same ; " and also, after enumerating various other heads of jurisdiction which do not apply to this case, that the court " shall have full equity jurisdiction, according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law." Gen. Sts. *c.* 113, § 2.

The restrictive clause in the statute limits our jurisdiction to cases where the parties have not a plain, adequate and complete remedy at law. In considering the question, therefore, whether any particular suit is within the equity jurisdiction of the court,

we must inquire whether the statutes or the common law furnish the plaintiff substantial and complete relief. If they do, jurisdiction in equity does not attach. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 376. *Pratt* v. *Pond*, 5 Allen, 59.

We will first consider the question as to our jurisdiction of the bill to foreclose. The statutes provide a simple and efficacious mode of foreclosing chattel mortgages. The mortgagee, after a breach of the condition, may give the mortgagor notice of his intention to foreclose, which notice, with an affidavit of service, is to be recorded wherever the mortgage is recorded; and " if the money to be paid, or other thing to be done, is not paid or performed, or tender thereof made, within sixty days after such notice is so recorded, the right to redeem shall be foreclosed." Gen. Sts. *c.* 151, §§ 6–8. If the mortgagee follows the steps pointed out by the statute, at the expiration of sixty days after the notice is recorded, unless there is a payment or tender of the debt due, the chattels mortgaged become his absolute property, and he may sell them and apply the proceeds to the payment of his debt. If they are not sufficient to pay the debt, he may have a suit at common law against the mortgagor for the balance. It is clear that in most, if not all cases, these provisions furnish a plain, adequate and complete remedy for the mortgagee.

We do not deem it necessary to decide whether under any circumstances a bill to foreclose a chattel mortgage can be sustained under our statutes. In *Lowell* v. *Daniels*, 2 Cush. 234, a bill to foreclose a mortgage of real estate was dismissed because the plaintiff had an adequate remedy at law. See *Holbrook* v. *Bliss*, 9 Allen, 69; *Shaw* v. *Gray*, 23 Maine, 174. If in any case a suit in equity for foreclosure can be sustained on the ground that the remedy furnished by the statute is inadequate, the bill of the mortgagees in this suit does not state such a case.

These mortgagors, on February 20, 1866, executed and delivered the written instrument, of which a copy is annexed to the bill, and as a part of the same transaction made an assignment, absolute in form, of the patent rights, which was duly recorded. The two instruments, construed together, were a mortgage of the patent rights, and of the patterns and drafts therein described.

The condition is, that the mortgagors shall pay all existing debts, and all which may arise under the contract embodied in the mortgage. If this condition is broken, the mortgagees can give notice to the mortgagors of their intention to foreclose, and at the end of sixty days after such notice the right to redeem will be foreclosed, unless the mortgagors pay or tender the amount due, or take some other legal measures to protect their rights. The agreement was to continue for three years, which had expired before this bill was brought. It is apparently within the power of the mortgagees to ascertain the balance which is due them. But if the accounts between the parties are complicated and disputed, so that it is difficult to ascertain the precise amount due, the embarrassment does not fall on the mortgagees. If anything is due so that there is a breach of the condition, they may give their notice, and thus commence the process of foreclosure. They do not take the risk of correctly determining the amount due, but the burden is on the mortgagors to ascertain this amount, in order, by the payment or tender thereof, to prevent a foreclosure. We are unable to see why the statute remedy does not afford the mortgagees in this case effectual relief, and are therefore of opinion that the demurrer to their bill to foreclose must be sustained, on the ground that they have a plain, adequate and complete remedy at law.

The remaining question is, whether the mortgagors can maintain their bill to redeem. As in the case we have just considered, we must first inquire whether they have a plain, adequate and complete remedy at law. The statutes provide that, when there is a breach of the condition, the mortgagor, or any person claiming under him, may redeem at any time before foreclosure, and that " the person entitled to redeem shall pay or tender to the mortgagee, or person holding under him, the sum due on the mortgage, or perform or offer performance of the thing to be done, and shall pay all reasonable and lawful charges and expenses incurred in the care and custody of the property, or otherwise arising from the mortgage ; and if upon such payment or performance, or tender thereof, the property is not forthwith restored, the person entitled to redeem may recover it in an action

of replevin, or may recover such damages as he may have sustained by the withholding thereof, in any action adapted to the circumstances of the case." Gen. Sts. *c.* 151, § 5. In the ordinary cases of mortgages of chattels, where the debt or duty of the mortgagor is ascertained and fixed, and the property mortgaged will pass by delivery, these provisions furnish an effectual mode of protecting the rights of the mortgagor, and there is no occasion for the intervention of a court of equity. But the case at bar presents two peculiar features, which make it impossible for the mortgagors to protect their rights fully by means of the statute remedy.

In the first place, the property mortgaged is of such a nature that the statute provisions cannot apply to it. It consists in part of an interest in patents, which is incorporeal property and cannot be transferred by delivery. An action of replevin is not applicable to it, and the mortgagors can only be reinstated in the possession of the property by a reconveyance. They are entitled to the possession and control of the mortgaged property upon paying the mortgage debt, and it is clear that they cannot obtain, fully and adequately, their rights in this respect, by means of the remedies furnished by the common law.

Another feature of the mortgage in suit is, that it is impossible for the mortgagors to ascertain the amount due on the mortgage, until the mortgagees render an account of their disbursements and expenses incurred under the contract. The bill alleges that they refuse to render such an account. By the statutes we have cited, the mortgagors, in order to redeem their property, must pay or tender the sum due on the mortgage. They are required to ascertain the amount due, and at their peril to tender a sufficient sum. It is plain that, where it is impossible for them to ascertain the sum which they ought to tender, the remedies provided by the statute do not afford them that full relief which they were intended to, and in most cases do, afford to mortgagors.

For these reasons, therefore, we are of opinion that, in the case at bar, the mortgagors have not a plain, adequate and complete remedy at the common law. This being so, we think it follows

that they may bring a suit in equity to redeem. If the provision of the statute, that the court may hear and determine in equity "suits for the redemption of mortgages, or to foreclose the same," where the parties have not a plain, adequate and complete remedy at law, does not include mortgages of personal as well as of real estate, it is clear that the provision that the court " shall have full equity jurisdiction, according to the usage and prac-tice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law," covers this case. Courts which have full equity powers have jurisdiction of suits for the redemption of mortgages of personal property. 2 Story Eq. § 1031. *Kemp* v. *Westbrook*, 1 Ves. 278. *Slade* v. *Rigg*, 3 Hare, 35. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62.

It is true, as urged by the counsel for the mortgagees, that a suit to redeem must necessarily, while it is pending, suspend the foreclosure under the statute ; but upon a just construction of the several statutes we are satisfied that it was the intention of the legislature, in order more fully to protect the rights of all parties, to give the mortgagor the right to a suit in equity, with all its incidents, if the statute remedy fails of its purpose and does not furnish him adequate and complete relief.

*In the first case the demurrer is sustained, and the bill dis-
    missed, with costs ; in the second case, the demurrer is over-
    ruled.*