[L. A. No. 265.    Department Two.—May 31, 1898.]

SAN PEDRO LUMBER COMPANY et al., Respondents, v. MERICK REYNOLDS et al., Appellants.

CORPORATIONS—MANAGER—CONTRACT OF EMPLOYMENT—BY-LAWS.—The pro-visions of the by-laws of a corporation regulating the powers and duties of its manager, and requiring him to cause regular and ac-curate accounts of all its business transactions to be kept by a com-petent bookkeeper, and to transmit monthly abstracts of the accounts to the secretary of the corporation, and conferring upon him power to discharge or suspend any or all persons acting under his orders, entered into and became part of the contract of employment of the manager to whom such provisions were actually known.

ID.—RESPONSIBILITY OF MANAGER.—The responsibility of the manager of a corporation is not the same as that of a director, but he is the agent of the corporation, vested with great powers and grave responsibil-ities; and in the performance of his trust he is required to exercise reasonable skill, diligence, and care, and to act in the highest good faith toward his principal, and for his failure to exercise due care in regard to the keeping of the accounts of the corporation, as required in the by-laws, he is responsible to the corporation.

ID.—APPOINTMENT OF BOOKKEEPER BY PRESIDENT—FALSE ENTRIES—DEFALCA-TIONS OF BOOKKEEPER—FRAUD OF MANAGER.—The fact that the book-keeper was appointed by the president of the corporation and not by the manager, and that the books were actually kept by such book-

keeper, cannot relieve the manager from liability for false entries in the books and defalcations made by the bookkeeper, where it appears that the manager connived at and procured numerous false entries in the books kept under his immediate supervision for his own improper ends, and himself corruptly embezzled funds, which were concealed by such false entries, and the fraud and defalcations of the bookkeeper were made possible by the manager's own fraud, and if he had given strict and upright attention to his duties, the embezzlement of the bookkeeper could not have been successfully carried out.

ID.—PLEDGE OF STOCK BY MANAGER—FORECLOSURE—EVIDENCE—BOOKS OF ACCOUNT OF CORPORATE BUSINESS.—Where the manager had pledged stock to the corporation to secure the payment of any sums for which he might be found liable to the corporation as its agent or employee, in an action to foreclose the lien of such pledge and for an accounting of his liabilities to the corporation, the books of the corporation, containing the accounts of its business transactions, kept under his immediate care and supervision and for the accurate keeping of which he was liable under his contract of employment, and which were also the accounts of the manager as agent of the corporation, and which were in effect his declarations and statements of the business transactions of the corporation through his bookkeeper, over whom he exercised supervision and control, were admissible against him to show that the books were not correctly kept. and for the purpose of supplementing them by proof of false entries and defalcations.

ID.—SUMMARIZATION OF ACCOUNTS—EXPERT EVIDENCE.—Schedules presented by an expert book accountant in connection with his testimony that they were a correct summarization of what the books showed, from which appeared shortages and defalcations to the amount sued for, are admissible, subject to cross-examination as to the items composing the schedules, and to judicial examination as to their accuracy.

ID.—DEFALCATIONS BY BOOKKEEPERS—BURDEN OF PROOF UPON MANAGER.—In order that the manager, after having been proved clearly guilty of fraud and embezzlement by connivance with bookkeepers should relieve himself for responsibility for acts of fraud and embezzlement committed by the bookkeepers themselves on their own account, the burden of proof is upon the manager to show either that the corporation in fact received the money, not embezzled by himself, or that the embezzlement by the bookkeepers occurred through no failure upon his part to perform his duties; and upon failure of such proof, the manager is justly chargeable with all losses sustained by the corporation, through his failure to keep full and accurate accounts.

ID.—LOSSES APPEARING FROM DEFECTIVE ACCOUNTS—PRIMA FACIE EVIDENCE. Where defective bookkeeping shows, a loss, it is at least *prima facie* evidence that a loss existed; and the manager is properly chargeable with losses so appearing, where there is no proof to the contrary.

ID.—ACTION AGAINST BOOKKEEPER—SATISFACTION OF JUDGMENT—RELEASE OF JOINT TORT FEASOR—PLEADING.—Where an action was brought by the manager in the name of the corporation to recover a specified sum of money as the alleged amount of his defalcations, but such action was not authorized by the corporation and was unknown to its directors, the judgment therein and the satisfaction thereof out of his property cannot operate to release the manager as a joint tort feasor with the bookkeeper for all of the corporation's demands against him; nor could such release be relied upon when not specially pleaded.

ID.—ACCOUNTING—TENDER.—Where stock was pledged for an amount which was undetermined and undeterminable until after an accounting had, the case is not one in which a tender can be made, and where a tender attempted was not for the amount found due, and the offer was not made in compliance with law, it must be disregarded.

ID.—STATUTE OF LIMITATIONS—CONCEALED BREACH OF TRUST—DISCOVERY.— Where it appears that the acts of the manager of a corporation which resulted in loss to the corporation were concealed breaches of his trust, the statute of limitations would not begin to run in his favor, so as to enable him to escape the results of an accounting, until after discovery and knowledge by the principal of his derelictions.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. W. H. Clark, Judge.

The facts are stated in the opinion of the court. Further facts are stated in the opinion rendered upon appeal from the judgment in 111 Cal. 588.

M. L. Graff, and A. W. Hutton, for Appellants.

The entries having been made by the bookkeeper, the only liability would be for want of ordinary care in employing or retaining him. (Civ. Code, secs. 1989, 2349, 2351; Code Civ. Proc., sec. 1848; Wharton on Agency, secs. 272, 277; *Scott v. Depeyster,* 1 Edw. Ch. 513.) The books were improperly admitted in evidence, and did not furnish evidence of fact to support the findings, and there was no evidence to fix liability upon Reynolds for any amount beyond that admitted, the expert accountants having relied on statements made by parties not in court. (*White v. Whitney,* 82 Cal. 166; *Rudd v. Robinson,* 126 N. Y. 113; 22 Am. St. Rep. 816, and cases cited; *Chaffee v. United States,* 18 Wall. 516; *Caldwell v. McDermit,* 17 Cal. 466; *Brewster v. Doane,* 2 Hill 537; *Green v. Pratt,* 11 Conn. 205; *Collin v. Card,* 2 Cal. 421; *Severance v. Lombardo,*

17 Cal. 57; Code Civ. Proc., secs. 1845, 1848, 1946; *Neilson v. Crawford*, 52 Cal. 248.) The judgment against Drane and its satisfaction is a complete bar to any action against Mr. Reynolds as a joint tort feasor. (*Urton v. Price*, 57 Cal. 270; Cooley on Torts, 139; *Herriter v. Porter*, 23 Cal. 385; *Tomkins v. Clay Street R. R. Co.*, 66 Cal. 163.)

Stephen N. White, and R. H. F. Variel, for Respondents.

The by-laws formed part of the contract of employment of the manager. (*Humboldt Sav. etc. Soc. v. Wennerhold*, 81 Cal. 530.) The liability of the manager is not that of a director. (3 Pomeroy's Equity Jurisprudence, secs. 1088—90; Morawetz on Corporations, sec. 550.) As a necessary consequence of his duty to account, it was his duty to keep true accounts. (Mechem on Agency, sec. 258; Wharton on Agency, sec. 299; 1 Am. & Eng. Ency. of Law, 383; 2 Pomeroy's Equity Jurisprudence, sec. 1063, note; *Letelle v. Myers*, 19 Gratt. 68; *Clark v. Moody*, 17 Mass. 148; *Cooley v. Betts*, 24 Wend. 203; *Lockwood v. Thorne*, 11 N. Y. 170; 62 Am. Dec. 81.) The burden of proof devolves on Reynolds as managing agent, acting in a fiduciary capacity, to account for missing moneys, and to disprove his responsibility therefor. (*Young v. Powell*, 87 Mo. 128; Bailey's Onus Probandi, 316, 319; *Darling v. Younker*, 37 Ohio St. 487; 41 Am. Rep. 532; *Marvin v. Brooks*, 94 N. Y. 71, 80, 81; *Rubidoex v. Parks*, 48 Cal. 215; *Rochester v. Levering*, 104 Ind. 562.) The books of account of the corporation were admissible against Reynolds. They are his admissions, it being his duty to account. (2 Wharton on Evidence, sec. 1333; *Morland v. Isaac*, 20 Beav. 392; *Currier v. Boston etc. R. R. Co.*, 31 N. H. 209; *Merchants Bank v. Rawls*, 7 Ga. 191; 50 Am. Dec. 394.) The results of the examination of the books were properly proved by the expert who made the examination. (*Burton v. Driggs*, 20 Wall. 136.) Reynolds is responsible for all the losses occasioned on account of his own criminal acts and negligence. (*Cutting v. Marlor*, 78 N. Y. 460; *Preston v. Prather*, 137 U. S. 604; *Hun v. Cary*, 82 N. Y. 71; 37 Am. Rep. 546; *Ackerman v. Halsey*, 37 N. J. Eq. 361; *Halsey v. Ackerman*, 38 N. J. Eq. 510; *United Society v. Underwood*, 9 Bush, 609; 15 Am. Rep. 371; *Horn Silver etc. Co. v.*

*Ryan,* 42 Minn. 196; *Delano v. Case,* 121 Ill. 247; 2 Am. St. Rep. 81; *Marshall v. Farmer's etc. Bank,* 85 Va. 683; 17 Am. St. Rep. 84; *Mutual etc. Sav. Bank v. Bosseiux,* 3 Fed. Rep. 817; *Williams v. McKay,* 40 N. J. Eq. 189, 201; 53 Am. Rep. 775.) The tender was insufficient, not being of the full amount due nor kept good. (Civ. Code, secs. 1485, 1486, 1500, 2905; *Loughborough v. McNevin,* 74 Cal. 250; 5 Am. St. Rep. 435; *McCalla v. Clark,* 55 Ga. 53; *Cass v. Higenbotam,* 100 N. Y. 248.) The stock could not be redeemed until an accounting was taken, the amount for which it was pledged not being ascertained. (*Boston etc. Iron Works v. Montague,* 108 Mass. 253, 254; *Bartlett v. Johnson,* 9 Allen, 536.) A tender is not effective when the amount of the indebtedness or liability is unascertained and unliquidated, and a trust is involved requiring an accounting. (*McDaniels v. Bank of Rutland,* 70 Am. Dec. 408 409; *Bryson v. Rayner,* 25 Md. 424; 90 Am. Dec. 69; *White Mountain R. R. Co. v. Bay State Iron Co.,* 50 N. H. 60; 2 Story's Equity Jurisprudence, sec. 1032; *Durant v. Einstein,* 35 How. Pr. 240, 241; *Hasbrouck v. Vandervoort,* 4 Sand. 74; *Merrill v. Houghton,* 51 N. H. 62; Jones on Pledges, secs. 556, 557, and especially sec. 558.)

HENSHAW, J.—This is an appeal from the order denying defendants a new trial. The appeal from the judgment in the same case will be found reported in *San Pedro Lumber Co. v. Reynolds,* 111 Cal. 588. In the opinion there delivered the nature of the case, and many of the facts necessary to an understanding of this appeal, are presented. Others will be set forth as occasion may demand for a full understanding of the questions.

The plaintiff corporation was engaged in the lumber business. Its legal residence and place of the meetings of its board of directors was the city of San Francisco. It owned and conducted a large lumber yard in San Pedro, and others in different towns in the southern part of the state. The general manager of its business was the defendant, Merick Reynolds. From the date of the incorporation of the company in 1882 until October, 1889, Reynolds had occupied this position. His duties as such manager were regulated and prescribed by the ninth article of

the by-laws, which reads as follows: "The manager or managers shall be appointed by the board of directors, and shall hold office during the pleasure of the board. It shall be the duty of the manager or managers, under the direction of the board of directors, to superintend, oversee, and direct the operations of the company outside of San Francisco. He or they shall have the immediate control, command, and direction of all the persons in the employ of the company outside of San Francisco. He or they shall have charge and custody of all the property of the company, real and personal, used or occupied in or about the company's premises outside of San Francisco. He or they shall cause to be kept regular and accurate accounts of all transactions in business of the company. All such accounts shall be kept by a competent bookkeeper. He or they shall monthly, and as often as the board shall direct, transmit to the secretary abstracts of his accounts, with the necessary vouchers. He or they shall have power to discharge or suspend any or all persons acting under his or their orders, and transact such other business as the board of directors may authorize. The manager or managers shall in all things and at all times comply with the directions or instructions given by the board of directors." The provisions of the by-laws were actually known to Reynolds. They entered into and became a part of his contract of employment. (*Humboldt Savings etc. Soc. v. Wennerhold*, 81 Cal. 528.) In September, 1889, plaintiff corporation made claim to Reynolds that a large amount of money was due from him to it, arising from peculations, defalcations, embezzlements, and breaches of trust in his management of the corporate affairs. Reynolds, in response to the demand of the plaintiff that security should be given for the amount of its losses so incurred, which amount was at the time undetermined and undeterminable (for the examination of the books had not then been completed), made to Hooper, the president of the corporation, as its trustee, a written assignment and pledge of certain stock owned by him. This property was pledged "as security for the payment by the undersigned, Merick Reynolds, of all sums of money that are now due or owing from me to the San Pedro Lumber Company, a corporation, or which may hereafter upon careful investigation of the books and affairs of said company be found to be due

or owing from me to the said corporation, or for the payment of which I may be liable either in law or equity to the said corporation, or for which I may be liable in any manner by reason of having been the agent or employee of said corporation." The pledgee was authorized to hold or to sell the stock "for the payment of the aforesaid sums of money now due or owing as aforesaid, or hereafter ascertained to be due or owing."

When its examination of the books had been completed plaintiff brought its action to foreclose its lien upon. the pledged stock. It averred that it had suffered losses by the embezzlements, defalcations, and improper conduct of the defendant to the amount of over fifty-three thousand dollars; that the exact amount could not be determined without an accounting. It prayed for such an accounting, and for a sale of the stock and a reimbursement from the proceeds of the sale in such amount as might be found due. This action was instituted after demand for payment had been made upon Reynolds. Defendants answered by denial, and by pleading a tender of twenty thousand dollars alleged to have been made to Hooper, which it is averred was the full amount of all possible demands of plaintiff against defendant Reynolds. By cross-complaint they sought to recover damages for the full value of the stock, insisting that Hooper's refusal to accept the tender amounted to a conversion of it.

Upon the trial, the court held the action to be one to foreclose the lien upon the pledged stock, to which foreclosure an account was a necessary incident. Notwithstanding the vast amount of labor involved in the stating of such an account, or perhaps because of it, the court declined to refer the matter, but retained it, heard the testimony, and itself stated the account, rendering judgment for the plaintiff in the sum of forty-eight thousand four hundred and thirty-two dollars and forty-four cents.

Reynolds, as has been said, was the manager of the corporation under the by-law above quoted. The principal place of business was at San Pedro, where Reynolds himself was located. It was the duty of the bookkeepers and employees in charge of the other lumber yards to report to the principal office at San Pedro, where the general books and accounts of the plaintiff

were kept. The principal bookkeeper was thus located at San Pedro under the immediate direction and supervision of Reynolds. In 1886 one C. K. Drane became the bookkeeper at San Pedro, and continued to act as such until August 17, 1889, when he disappeared. He has not since been heard from, and his abiding place is unknown. Twelve days after his disappearance Reynolds communicated with Hooper in San Francisco, informing him of the disappearance of Drane, and of his belief that Drane was a defaulter. An examination of the books of the company was promptly instituted. This examination was made by C. F. Lutgen, an expert accountant and a witness upon the trial. At the time the examination was instituted the officers of the corporation seem to have entertained no thought that Reynolds was himself in any degree culpable. This conviction was soon brought home to them. After knowledge they promptly charged Reynolds with dereliction in duty and the abstraction of corporate funds. Reynolds, in several letters to the president of the corporation, confessed his wrongdoing, begged forgiveness, and promised restitution of all that the company had lost. To give but a single quotation, upon October 3, 1889, he writes: "Oh, Mr. Hooper, won't you forgive me my acts and permit this. . . . . I see where I erred, and I beg and implore you for the sake of the family I have to be lenient with me. . . . . I know you have great reason to be very much offended and I am very much ashamed. Still, I beg you overlook my fault. Permit me to repay. I did not realize at the time of my offense that I was acting in such bad faith to my best friends."

The first consideration which invites attention is that of the position which Merick Reynolds occupied in relation to the corporation, the duties which attached to that position, and the legal consequences which must follow a failure to perform those duties. Appellant challenges certain findings of the court making declarations in this regard, and contends that, as Reynolds was general manager, he was liable only for want of ordinary care in employing the bookkeeper Drane; that Reynold's position is like and his responsibility the same as that of a director of a corporation in his relation to the stockholders. The cases of *Scott v. Depeyster*, 1 Edw. Ch. 513, and *Savings Bank*

CXXI. CAL.—6

*Assn. v. Caperton*, 87 Ky. 306, 12 Am. St. Rep. 488, are here cited. But the present is not an action by a stockholder against a director. The duties of Reynolds as manager are not identical with the duties of a director, and the cases are not in point. Reynolds was the agent of the corporation. In him were vested great powers, and upon him were cast grave responsibilities. His position was a position of trust, and in the performance of that trust he was required to exercise reasonable skill, diligence, and care, and to act in the highest good faith toward his principal. (1 Lawson's Rights and Remedies, secs. 82, 83.)

The by-law above quoted became a part of Reynold's contract of employment. It measured his powers, fixed his duties, and defined his responsibilities. He had immediate control of all the employees of the company outside of San Francisco, and could retain or discharge at his pleasure. It was his duty to cause to be kept regular and accurate accounts of all the transactions of the company by a competent bookkeeper, and he was to transmit monthly, or as often as the board directed, abstracts of accounts, with necessary vouchers. For his failure to exercise due care in regard to these matters he was responsible to his principal.

But it is not merely with negligent omissions that he is charged. The case against him is not made up wholly, or even mainly, of averments and proofs that by reason of his negligence others in the employ of the company succeeded in embezzling its funds. The gravamen of the charges is that the defendant himself both connived at and procured the making of numerous false entries in the books kept under his immediate supervision and direction by the bookkeeper Drane, and that the falsification of these books was for Reynold's own improper ends. It is charged that Reynolds himself knowingly and corruptly embezzled funds of the corporation, and concealed his peculations by an elaborate system of deceptive and fraudulent entries running through the books. It is true the books were actually kept by Drane. It is true that Reynolds did not personally employ Drane. He was sent to San Pedro as bookkeeper by Hooper, the president of the corporation. But these facts do not even tend to exonerate Reynolds in the matters charged. It clearly appears from the evidence that Reynolds dominated Drane, and frequently directed the making of false entries whose effect was to advantage Rey-

nolds alone, and not Drane.   In many instances Drane could not have made the entries without himself knowing their falsity. It is not surprising that seeing his superior thus misappropriating the moneys of the company, Drane, while complacently aiding him in the work, should, when opportunity presented, have stolen upon his own account.   For all of these thefts Reynolds, under the terms of his employment, was chargeable.   If he had given strict and upright attention to his duties, Drane's embezzlements could not have been successfully carried out.   They were made possible by Reynold's own frauds, and his wide departure from the lines of his duty.   Being himself engaged in unlawful appropriations, and using Drane to conceal the acts, Reynolds was in no position to criticise, check, or expose the like acts of his confederate and assistant.

Plaintiff introduced in evidence, over the objection and exception of defendants, the books of the corporation.   These books, while not in the handwriting of Reynolds, were under his immediate care and supervision, and he was responsible for their accurate keeping under his contract of employment.   It is contended by appellants that the books were not admissible, and sundry arguments are advanced in support of the proposition.   It is said that they should be treated as are treated the books of a tradesman, admissible only if supported by independent evidence to their correctness, and then only as to the accounts of a tradesman with his customers; that these books, as was contended and shown by the prosecution, were not correctly kept, and that therefore they were inadmissible; that they were not used in establishing the account of the corporation against the customer, and that therefore they were inadmissible.   Again, it is said that they were inadmissible against defendant Reynolds for any purpose, and herein the cases of *Rudd v. Robinson,* 126 N. Y. 113, 22 Am. St. Rep. 816, *Scott v. Depeyster, supra,* and *Neilson v. Crawford,* 52 Cal. 248, are relied upon.   This last proposition depends entirely for its force upon the point heretofore considered; that is to say, upon the relationship which existed between the corporation and Reynolds, and the duty of Reynolds as manager.   With Reynold's duties thus defined, it will at once be seen that *Rudd v. Robinson, supra,* and *Scott v. Depeyster, supra,* are not at all in point.   Those cases were similar.   In *Rudd v. Robinson, supra,*

the action was to charge one of the members of the corporation with a personal liability to the corporation. There was no proof that the defendant had actual knowledge of the entries contained in the books, or that he authorized the entries, or caused them to be made. "There was no proof from which the law would raise the legal presumption that he had knowledge of the entries, unless he was chargeable with such knowledge from the mere fact that he was a stockholder and trustee of the corporation. There is no rule of law which charges a director or stockholder of a corporation with actual knowledge of its business transactions, merely because he is such a director or stockholder. In this case, the broad claim is made that in an action by a corporation against one of its members to enforce a personal liability of the corporation, its books are competent evidence against him to show the different accounts between him and it, and to establish the extent of his liability to it upon their simple production and proof that they are the books kept as such by its officers and agents." The foregoing is a quotation from the opinion in *Rudd v. Robinson, supra.* The distinction between that case and the one at bar becomes immediately apparent. Here the positive duty was cast upon Reynolds, not alone under the general laws of agency (Mechem on Agency, sec. 528), but expressly by the terms of his employment, to cause to be kept proper books of account. These books are offered by him to the corporation as containing an accurate and faithful record of his stewardship. In addition to being the corporation's books, they are the agent's accounts. They are statements, declarations of the agent as to the manner in which he has transacted the business of his principal, and of the dispositions which he has made of the property intrusted to him. They are admissible against him, as are any declarations or admissions of a party going to a matter in issue. This proposition is expressly declared in *Neilson v. Crawford, supra,* relied upon by appellants, where it is said: "In an action brought against the corporation itself for the recovery of a debt, the books of account kept by the corporation would be admissible in evidence because they are the declarations and admissions of the corporation entered by its servants and under its control." So here the statements of the books were the declarations and admissions of Reynolds, entered by those over whom he exercised supervision and

control.    In *Neilson v. Crawford, supra,* it was held that in an
action brought by a creditor of a corporation to recover on the
stockholder's liability for his proportion of an indebtedness to the
corporation, the books of the corporation were not admissible
in evidence in behalf of the plaintiff to prove the indebtedness;
but in *McGowan v. McDonald,* 111 Cal. 57, 52 Am. St. Rep. 149,
a contrary rule is announced, and it is said that any evidence
competent to establish the liability of the corporation would be
competent to establish the liability of the stockholder.    However,
as has been said and shown, the case is not in point.    For Rey-
nolds, as agent, was charged with the duty of keeping and pre-
senting to his principal correct accounts, and the accounts which
he kept were admissible as *prima facie* evidence against him.
(2 Wharton on Evidence, sec. 1333; Mechem on Agency, sec. 100;
1 Greenleaf on Evidence, secs. 150-54.)

Appellant's argument that plaintiff, having offered the books
in evidence, is bound by them, may not be sustained.    The books
were offered for a twofold purpose: 1. To show that the agent did
not keep either strict or accurate accounts of his dealings with
the property intrusted to him; and 2. For the distinct purpose of
showing by the books, coupled with independent proof, that part
of the property with the custody of which Reynolds was charge-
able was not accounted for by him, and was not by him delivered
to the possession of his principal.    The first purpose, that is to
say, the failure of the agent to keep accurate accounts, was estab-
lished by the very introduction of the books.    They spoke for
themselves.    Upon their face it could be seen and determined
whether or not there were irregularities of double charges, over-
charges, improper charges, or omitted charges.    This did not
amount to proof that the corporation had sustained loss, but it
was direct proof that the agent had failed in his duty to keep by
the books an accurate record or history of his dealings and trans-
actions with the corporation's property.    It is quite true that,
since bookkeeping is only a history of transactions, a man does
not lose money merely by faulty bookkeeping.    This proposition,
however, was fully realized, and frequently stated by both court
and counsel during the trial of the cause.    When, however, to the
proof of faulty bookkeeping is added evidence from independent
sources that large sums of money which would be due to the cor-

poration under a correct statement of accounts were not in fact received by the corporation, then at once the duty is cast upon the trustee, not alone to explain the entries, but as well to account for the moneys.

The expert Lutgen, when on the witness stand, presented certain schedules which he testified were summarizations of what the books showed. By these schedules appeared shortages and defalcations to the amount sued for. It is insisted by appellant that they were not admissible. In *Burton v. Driggs,* 20 Wall. 136, it is well said: "When it is necessary to prove the results of voluminous facts, or of the examination of many books and papers, and the examination cannot be conveniently made in court, the results may be proved by the person who made the examination. Here the object was to prove, not that the books did, but that they did not show certain things. The results sought to be established were not affirmative, but negative. If such testimony be competent as to the former, *a multo fortiori* must it be so to prove the latter." Says Greenleaf (1 Greenleaf on Evidence, sec. 93): "A further relaxation of the rule has been admitted where the evidence is the result of voluminous facts, or of the inspection of many books and papers, the examination of which could not conveniently take place in court." Here the expert Lutgen was showing by his schedules, not alone what the books did contain, but what they should have contained and did not contain. The records of accounts with their vouchers were most voluminous. It is said by the respondent that they would weigh a ton, and appellant concedes that this estimate is not far from the truth. The transactions covered years in time and millions of dollars in value. Lutgen was rigidly cross-examined as to the items composing his schedules, and their correctness was established. They were, therefore, unquestionably admissible.

It is further said by appellants that the court accepted the estimates as shown by Lutgen's schedules, and charged defendants accordingly, and that this was error. Herein they rely upon and quote the case of *North Hudson etc. Assn. v. Childs,* 33 Am. St. Rep. 57, to the following effect: "In an action by a corporation against its president and treasurer to recover for losses alleged to have been sustained through their negligent and un-

authorized acts, it is error for the trial court, without judicial examination as to its accuracy and justice, to adopt as a basis of judicial action against the defendants the report of an expert accountant, employed by plaintiff to examine into its accounts and ascertain the extent of such losses." We need not take issue with the law thus declared. For the facts are at entire variance with those in the present case. Here the court itself heard all the evidence and stated its own account. All the books, papers, and vouchers were before it. Lutgen's schedules were no more than the summarization of the results of his expert examination of these accounts. The court did not accept them as true, saving as they were shown to be true by all the evidence. As a result of this patient hearing of a vast mass of testimony, and after a most laborious examination of the accounts made by itself, the court rendered a judgment, for a large amount it is true, but not for the amount which it was contended by plaintiff was properly chargeable against Reynolds.

Appellant admits that a large sum of money is due from Reynolds upon account of his embezzlements and improper charges. But it is insisted that the court erred in charging him with any other or greater amount than the sum of fifteen thousand three hundred and twelve dollars and seventy-four cents. It is further said that the evidence does not show that Reynolds ever received any greater amount than that mentioned, and it is suggested, and indeed argued, that the further sums going to make up the judgment, if lost to the corporation, were lost by the peculations of Drane, with which Reynolds was in no wise chargeable. Upon the part of the respondent it is answered that, having in view the duties of Reynolds under his trust, when it showed that he did not cause to be kept faithful and accurate accounts the duty of an accounting was cast upon him; that when it further showed that in specific instances Reynolds had defrauded and despoiled the corporation, the burden of proof shifted to him to account for every dollar of its property which had passed into his possession; that it was only necessary, therefore, for the corporation to prove that a specific amount of money had been lost; it was the duty of Reynolds to satisfactorily explain what had become of it, and, if he failed so to do, he was chargeable with it.

This argument is certainly sound. It was not necessary for the corporation to prove that all of the money had been abstracted and embezzled by Reynolds. It was for him to show what had become of it. Aside from the admission of his counsel as to the amount due from Reynolds to the corporation, no doubt can be entertained from the other evidence in the case that Reynolds was a proved embezzler to a very considerable amount. There are the admissions in his letters to which we have adverted. But, in addition, there are many items charged upon the books whereby it manifestly appears, and indeed is admitted, that the moneys of the corporation were by him abstracted. For example, it is proved that Reynolds carried a dummy name upon the payroll for years; that he caused the bookkeepers to enter upon their books the salary of one Lewis, at the rate of fifteen dollars a week; that there was no Lewis, and that he drew and used this money for his own ends. It is shown that he did this not only under Drane, the corrupt bookkeeper, but under the bookkeeper who had preceded Drane; and it is further shown that when the president of the corporation, during the time when the books were under investigation, asked him who and where Lewis was, Reynolds stepped to the door of the office, looked up and down the wharf, and replied that he was about the yard somewhere, and that he was surprised he was not in sight; and added, "Drane knows him." Drane at that time had absconded and was out of the state. The payroll peculations alone, as admitted by Reynolds' counsel, exceed six thousand dollars. Again, it was shown that Reynolds purchased a piece of land and built thereon a house with lumber and labor supplied under his orders from the corporation yard, and made no charge against himself for the amount. Without multiplying instances, it is sufficient to say that there are numerous items in small amounts entered in the books under the direction of Reynolds, all showing direct appropriations for his benefit. His moral turpitude in the matter is demonstrated. In addition, and as going generally to show the irregular manner in which the books were kept, it is shown without contradiction that from January 1, 1887, to August 31, 1889, seven hundred checks were drawn against the bank for the aggregate amount of two hundred and sixty thousand dollars, and that no one of these checks was entered in the cash-books or

other books of the company. And, finally, the expert testified that in fifteen years of experience as an expert accountant he had never seen books so cunningly falsified as were those in the case on trial.

In addition to these sums which were thus directly traced to Reynolds, it was shown by the corporation that it had not received other large sums. The evidence did not disclose what had become of these moneys. But enough had been proved to cast the burden upon Reynolds of accounting for all of this property with which he was primarily chargeable, and in any instance in which he fails he must bear the loss. This accounting he could make either by a showing that the principal in fact received the property, or admitting the loss, by establishing that it occurred through no failure upon his part to perform his duties. No such proof does defendant offer. In Wharton on Agency, section 299, it is said: "The agent is bound to debit or charge himself in the account with all money and other things which have come into his hands in his agency; and, if by his own fault he has let any of them be lost or perish, he must charge himself in place of these with the sums at which the damage resulting from their loss may be estimated." In Pomeroy's Equity Jurisprudence, section 1063, it is said: "A failure to keep full and accurate accounts raises all presumptions against the trustee, and may subject him to pecuniary loss as for moneys received and not duly accounted for." An affirmative duty was cast upon Reynolds to cause to be kept accurate accounts. Instead of doing this, the books were falsified under his direction and for his benefit in a great many instances, and in very many ways. Upon establishing his agency and these facts, the burden of proof shifted to him to account for all of the losses which the company by its *prima facie* case established, and in any instance where he failed to account for property he was chargeable with it or its value. (*Roubidoex v. Parks,* 48 Cal. 215; *Young v. Powell,* 87 Mo. 128; *Darling v. Younker,* 37 Ohio St. 487; 41 Am. Rep. 532; *Marvin v. Brooks,* 94 N. Y. 76; *Rochester v. Levering,* 104 Ind. 562; *Bank of British North America v. Cooper,* 137 U. S. 473; Bailey on Onus Probandi, 316; Kerr on Fraud and Mistake, 151; 2 Pomeroy's Equity Jurisprudence, sec. 959; Bigelow on Fraud, 301.)

The effect of the evidence establishing fraud in specific in-

stances is thus declared by Wharton in his work on Evidence; page 39: "We may, in fine, conclude generally that when a mass of action is examined in block it is allowable to assume as a presumption of fact that, if a part of it is tainted in a particular way, the rest is so tainted. Thus, where most of the vouchers produced by a party in proving his accounts show an overcharging of items, it may be inferred as a presumption of fact that a like proportion of the items not vouched are overcharged."

It is again urged by appellant that the court relied solely upon the evidence of the books, and that no other evidence was offered in arriving at the amount of its judgment, and that the books being a mere history of transactions, appellant was improperly charged with losses which were not proved to exist, but which only appeared to exist by reason of defective bookkeeping. To this it may be said that, where the defective bookkeeping shows a loss, that is at least *prima facie* evidence that the loss existed. But, in addition to that, there is the evidence of the expert Lutgen on behalf of respondent, as follows:

"Q. And that was relied upon by you to make up your defalcation of fifty-three thousand dollars? A. I told you already, Mr. Graff, partly it was; partly it was relied upon, upon the absence of money, because afterward I did not find the money for these remittances and for these defalcations. If I had found the money afterward, there would have been no defalcation, but through the absence of money it became a defalcation or defalcations." Indeed, with the burden cast upon him, defendant Reynolds throughout the whole case lamentably failed to account for any of these sums.

It has been noted that in the month of August, 1889, the bookkeeper Drane fled the state. After his flight Reynolds, in the name of the San Pedro Company, brought action against him for the sum of five thousand dollars, moneys had and received, and attached some of his property within the jurisdiction of the court. Drane, of course, made no answer. Judgment passed for the corporation, and was satisfied out of the property. At this time Reynolds' complicity and culpability were not suspected by his employer, but furthermore, the corporation not only did not authorize the action, but did not know of it. Upon this appeal Reynolds urges that, as he and Drane were

joint tort feasors, this judgment so obtained against Drane must operate as a complete satisfaction for all the corporation's demands against him. It seems scarcely necessary to do more than state the proposition, for the statement carries with it the refutation of its soundness. However, it may be added that before appellants could rely upon this satisfaction, having the opportunity they should have pleaded it, and they did not do so.

It is unnecessary to discuss appellants' tender of twenty thousand dollars. If the tender were in itself good and kept good, it is more than doubtful whether the case is one in which a tender could be made at all, remembering that the stock was pledged for an undetermined amount, and for an amount undeterminable until after an accounting had. (*Boston etc. Iron Works v. Montague,* 108 Mass. 248; *Bartlett v. Johnson,* 9 Allen, 530; *Mc-Daniels v. Bank of Rutland,* 70 Am. Dec. 406; *Beatty v. Sylvester,* 3 Nev. 228.) In any event the tender was not for the amount found due. (*San Pedro Lumber Co. v. Reynolds, supra.*) Nor was the offer made in compliance with the law. (*Chielovich v. Krauss* (Cal., Sept. 1, 1886), 11 Pac. Rep. 781.)

The statute of limitations cannot be successfully invoked. Reynolds was acting in a fiduciary capacity. Such of his acts as resulted in loss to the corporation were concealed breaches of trust. The statute of limitations would not begin to run in his favor, so as to enable him to escape the results of an accounting, until after knowledge by his principal of his derelictions. In this case the accounting was promptly demanded after discovery.

The record in this case is very voluminous; the labor entailed in its examination is far from slight, but that labor has been made as light as possible by the very able and exhaustive presentations in the briefs of counsel upon either side. It is thought that the court may with propriety express its appreciation of the valuable aid which counsel have afforded.

The order appealed from is affirmed.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.