## DETTERING v. NORDSTROM.

### (Circuit Court of Appeals, Ninth Circuit. June 20, 1906.)

### No. 1,247.

1. JUDGMENT—CONCLUSIVENESS—RES JUDICATA.

Plaintiff sued for an accounting of mineral derived from a mining claim in which he claimed an interest, and when defendant answered, denying plaintiff's title, plaintiff instituted an action at law to obtain an adjudication of the title, also claiming damages for the alleged wrongful withholding of the possession of plaintiff's interest in the claim. During the trial plaintiff elected to waive the damages, which was allowed over defendant's objection, and judgment rendered in favor of plaintiff for his interest in the claim. *Held,* that such judgment did not estop plaintiff in the suit for an accounting to recover the value of his interest in the ore extracted from the claim; his action in waiving damages being merely a withdrawal of that issue in the suit at law and an election to try the question in the suit for accounting.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1262.]

2. TENANCY IN COMMON—MINES—ACCOUNTING.

The right of a co-tenant to credit for the reasonable expense incurred in taking out the gold from a mining claim, as against his co-tenant, was not affected by his inequitable conduct in denying his co-tenant's title, in violating his parol agreement to carry on no mining on the property, in refusing to account, or in making a false statement in his answer in a suit for an accounting that the profits over and above expenses were but $5,000.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tenancy In Common, § 97.]

3. SAME.

Where, in an action for an accounting of a co-tenant's interest in a mining claim, defendant offered no proof of the reasonable expenses of extracting the gold dust, the court properly allowed a co-tenant, who was the owner of a one-fourth interest in the mine, one-fourth of the gross output thereof.

4. SAME—EVIDENCE.

In a suit for an accounting of a co-tenant's interest in gold dust extracted from a mine, evidence that the terms of a lease executed between defendant and certain miners who worked the mine were fair and reasonable, and in accordance with the custom of the country at that time for claims of the character of those in question, including a payment thereunder of the sum of $2,000, was inadmissible.

5. PLEADING—OFFSET—EVIDENCE.

Where, in a suit for an accounting, the bill involved mutual accounts, defendant, without pleading, was entitled to prove the items constituting his offsets and expenses, provided they were directly connected with the matters alleged in the bill.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, § 1296.]

6. SAME.

Where a bill by a co-tenant of a mining claim for an accounting was limited to the output of the mine and the expenses incurred in mining, defendant, without pleading, was not entitled to offset expenses incurred by him in surveying the claim and expenses of litigation over the location of the lines of the claim.

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

148 F.—6

The appeal in this case is taken from a decree rendered in a suit which was commenced by the appellee against the appellant on September 21, 1903, for an accounting of the gold mined by the latter from a placer mining claim situated in the Nome district in Alaska. The complaint alleged that the appellee owned an undivided one-fourth and the appellant an undivided three-fourths of the mining claim; that from May or June, 1902, up to the time of the commencement of the suit, the appellant had taken from the claim more than $100,000 in gold; that the appellee had demanded of him a statement and accounting of said working and mining, and had demanded that he pay the appellee one-fourth of the gold and gold dust extracted from said claim, less the reasonable expense of extracting the same; that the appellant refused to account; and that the amount of the gold dust extracted from said mine by the appellant was largely in excess of the expense of mining. The appellee prayed for judgment against the appellant that he account for the gold dust so extracted by him, less the reasonable expense of working and securing the same. The appellant in his answer admitted that he had extracted $30,000 from the claim, but denied that the net amount derived by him after deducting expenses of mining amounted to more than $5,000. He denied the title of the appellee to any interest in the claim. The case was tried before the court. The appellee introduced in evidence a deed from the appellant to him, of date March 5, 1901, conveying to him a one-fourth interest in the claim. He also introduced in evidence the judgment roll in an action at law in which he recovered judgment against the appellant for the possession of his undivided one-fourth interest of the mining claim. That action was commenced October 3, 1903, subsequently to the commencement of the present suit. By the complaint in that action damages were claimed in the sum of $25,000 for the alleged wrongful withholding of the possession of the appellee's interest in the claim. Said claim of damages was based upon the alleged extraction from the claim by the appellant of $100,000 in gold dust during the same period for which the accounting is demanded in the present suit. It appears from the judgment roll that on the trial of that action the claim for damages was withdrawn by the appellee. The entry in the minutes of the court is as follows: "This case came on for trial before the court and a jury. Counsel for plaintiff then waived all damages against defendants, which waiver was resisted by counsel for defendant and allowed by the court."

At the trial of the present case the appellee relied on the admission of the answer and introduced no evidence as to quantity of gold extracted by the appellant or expenses incurred by him in so doing. When the appellee had rested his case, the appellant moved that the suit be dismissed, because it appeared from the evidence introduced by the appellee that the matter upon which the suit was founded had been adjudicated in the action at law and that the judgment therein was a bar to the present suit. The motion was denied by the court. Testimony was then introduced by the appellant which showed substantially as follows: That on May 26, 1902, the appellant made a written lay or lease of the mining claim to John Leonard and J. D. Reeves, by the terms of which the latter were to have the first $2,000 taken from the mine and the remaining gross proceeds were to be divided one-half to them and one-half to the appellant; that during the period of time mentioned in the complaint $30,082 was taken from the claim by the laymen, of which they received $16,041 and the appellant $14,041 and that this was the total gross amount of gold dust taken from the claim during the period mentioned in the complaint. The court made findings of fact substantially as follows: That the appellee was the owner of an undivided one-fourth interest in the placer mining claim; that during the period mentioned in the complaint the appellant extracted from the mine $30,000 and appropriated the whole thereof to his own use; that prior to the commencement of the suit the appellee demanded that the appellant account and pay to him one-fourth of the amount of the gold dust extracted from said claim less the reasonable cost of extracting the same; that the appellant refused to render any account or to pay to the appellee any sum whatever. As conclusions of law the court found that the appellant and appellee were since March 5, 1901, tenants in common

of said placer mining claim, and that the appellee was entitled to judgment against the appellant for one-fourth of the sum of $30,000, less the sum of $80 expended by the appellant in shipping a part of the gold dust to Seattle, to wit, the sum of $7,480, with interest thereon at 8 per cent. per annum since September 21, 1903, and costs.

Ira D. Orton, J. K. Wood, and Campbell, Matson & Campbell, for appellant.

James E. Fenton, Albert H. Elliot, and O. D. Cochran, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is earnestly insisted that the court erred in denying the motion of the appellant, made at the close of the appellee's testimony, to dismiss the suit on the ground that the matter involved therein had been adjudicated in the action at law in which the appellee had waived his claim for damages. We find no merit in the contention. The appellee had brought the present suit for an accounting. When the appellant answered, denying his title, he found it necessary to institute the action at law to obtain an adjudication of his title. When that action came on for trial he chose to withdraw from the issues therein his demand for damages, preferring to litigate the same in the present suit which was then pending. Although the language of counsel for the appellee was that the latter then waived all damages against the appellant, it was not intended to be a waiver of the damages and was not so understood by the appellant. This is made clear by the fact that the appellant resisted the waiver of the damages, he evidently preferring to try the question of the damages in that action rather than in the suit in equity. The action of the appellee can reasonably be construed only as an election to try the question of his damages in the equitable suit wherein an accounting could be had. It was intended to be and was a voluntary withdrawal of that portion of his complaint from consideration in that case.

The appellant contends that he had the right to work the mine and was not a trespasser in so doing, and that in the absence of allegation and proof of ouster of the appellee the court erred in allowing the latter one-fourth of the gross amount taken from the mine. It is clear from the record that the trial court did not rule that the appellee was entitled to one-fourth of the gross output of the mine. The complaint did not so pray, nor did the court so adjudge. From the bill of exceptions it appears that the court said to the appellant's counsel:

"We will adopt the rule that you are accountable for the money value were the ground in place, with the ore in place, less the reasonable expenses of extracting the same."

The appellee had admitted in his complaint that the appellant should be allowed "the reasonable amount for working and securing said gold and gold dust." The appellant had answered, admitting the extraction of $30,000 from the mine, but denying that the amount taken out was in excess of the expenses of mining, except in the sum of

about $5,000. There was nothing in the pleadings nor in the ruling of the court to prevent the appellant from introducing proof of the reasonable expense of taking out the gold dust and obtaining credit therefor. His right to credit for such expenses was not affected by his inequitable conduct in denying his co-tenant's title, in violating his parol agreement with the appellee to carry on no mining on the property, in refusing to account, or in making the false averment in his answer that the profits over and above expenses were but $5,000. The reason why the court allowed the appellee one-fourth of the gross output of the mine is found in the fact that the appellant offered no proof of the reasonable expenses of extracting the gold dust. The only testimony he offered in that respect was that of witnesses to prove that the terms of the lease executed between Leonard and Reeves and the appellant were fair and reasonable and in accordance with the custom of the country at that time for claims of that character, including the payment of the sum of $2,000.

Error is assigned to the exclusion of such testimony, but we think it was properly excluded. It was not competent to prove the reasonableness of the bargain made by the appellant with his lessees. Neither the existence of the lease nor its terms had been pleaded by the appellant. It is true that an answer in a suit for accounting does not have the same scope as an answer in ordinary cases, and that under a bill for an accounting involving mutual accounts, the defendant has nothing to plead in order to have the advantage of the items constituting his offsets and expenses directly connected with the matters alleged in the bill. Goldthwait v. Day, 149 Mass. 185, 21 N. E. 359; Wyatt v. Sweet, 48 Mich. 539, 12 N. W. 692, 13 N. W. 525; Armstrong v. Chemical National Bank (C. C.) 37 Fed. 466. The appellee demanded judgment for one-fourth of the gross amount taken from the mine less the expense of mining. The appellant, notwithstanding that he had set up no items of expense was entitled to prove the reasonable expenses of mining and thereby to reduce the amount payable to the appellee. The appellant relies upon Fulmer's Appeal, 128 Pa. 24, 18 Atl. 493, 15 Am. St. Rep. 662, in which it was held, in the case of a slate quarry uncovered and fully developed with machinery and appliances at hand, that the compensation to the plaintiff was to be measured by the fair market value of the slate in place, which was the royalty or slate-leave for the privilege of removing and manufacturing the slate, in view of all the special circumstances. But the court said:

"Where the mineral land has never been developed and no mines or quarries have been opened, the fair market value of the mineral in place which would be the value of the privilege of removing it in view of all its special circumstances would represent the true measure of compensation to the owner."

The circumstances so alluded to in that case were the fact that the mine was in the region of numerous other slate quarries, that there was proof of a generally established rate of royalty for mining the same, and the slate itself had no fixed market value. The court in that case, however, expressly approved the doctrine of the case of

Coleman's Appeal, 62 Pa. 252, in which Mr. Justice Sharswood ruled that the value of iron ore to be accounted for was its value at the pit's mouth after deducting the cost of mining, but distinguished that case from the case under consideration by saying that the whole tendency of the opinion in Coleman's Appeal was to show that there was no substantial difference between the value of the ore in place and its value at the pit's mouth, except the mere cost of digging and removing it from the one place to the other, and that this, "added to the fact that there never had been any sales of ore-leave at the Cornwall banks, and no proof of the opinions of experts as to what such ore-leave was worth, impelled the adoption of the principle upon which the value of the ore-leave was determined." Those remarks are applicable to the present case. There is no evidence in the record that there was any fixed royalty for mining placer claims in the region in which the mine in question was situated. The offer was to prove by experts that the lease was reasonable. It may be said to be of common knowledge that in Alaska no two placer mines contain the same amount of gold dust, and that it can never be certainly known what will be found beneath the surface of any claim. It may be true, in accordance with the offer of proof, that men could be found to undertake the development of placer claims in that general region upon such terms as the appellant made with his lessees; that is, upon allowing them the first $2,000 extracted from the mine and one-half of the gross amount thereafter taken. Such a venture necessarily is one in which the laymen take chances. If they fail to find gold in sufficient quantity to pay for mining, they can abandon the lease. If they find a rich mine, they have the opportunity to make large profits. The appellee could not be bound by such a lease made by his co-tenant to another. The appellant had no right to waste the substance of the mine. He had the right to operate the mine, but with it went the obligation to account for the output less the reasonable expenses of mining and to prove that expense the burden was upon him. Thatcher v. Hayes, 54 Mich. 184, 19 N. W. 946; Purdy v. Rutter, 3 W. Va. 262.

It is urged that the court erred in excluding evidence offered by the appellant of expenses incurred by him in 1893 in surveying the claim and expenses incurred in litigation over the location of lines of the claim. These items might have been proper offsets, if they had been pleaded in the answer. In the absence of an answer setting up such items, the accounting was necessarily confined to the matter presented by the bill. The accounting which was prayed for was not a general accounting. It related only to the output of the mine and the expense incurred in mining. It could not, under the pleadings, extend to matters not connected therewith. Armstrong v. Chemical National Bank (C. C.) 37 Fed. 466; Purdy v. Rutter, 3 W. Va. 262.

We find no error for which the decree should be reversed. It is accordingly affirmed.