GILBANE et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court of Appeals, First Circuit. June 18, 1908.)

No. 757.

**1. APPEAL AND ERROR—REVIEW—ACTION AT LAW TRIED TO COURT.**

The rule applied that, where an action at law in a Circuit Court is tried by stipulation without a jury, the appellate court cannot review rulings of law except so far as they relate to the admission and rejection of evidence or otherwise concern the progress of the case, though it may, perhaps, have power to set aside the judgment where there is no evidence whatever to support the findings of fact.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3347-3366.]

**2. INSURANCE—EMPLOYER'S LIABILITY INSURANCE—ACTION TO RECOVER PREMIUMS—EVIDENCE.**

Where the assured under an employer's liability policy obligated itself to furnish to the insurer correct statements of the amount of wages paid to employés covered by the policy as a basis for the adjustment of premiums, in an action to recover additional premiums on the ground that the defendant understated such wages, the fact that the plaintiff is unable to prove with certainty the amount of such payments because of the manner in which defendant kept its books does not deprive it of the right to recover at all, and the court is justified in accepting approximate estimates as a basis of recovery, in the unavoidable absence of specific evidence.

In Error to the Circuit Court of the United States for the District of Rhode Island.

Seeber Edwards (James J. McGovern and Edwards & Angell, on the brief), for plaintiffs in error.

John P. Beagan, for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This was a suit at common law, the circumstances of which, so far as we need consider them, are told by the plaintiffs in error in the following language:

"The Fidelity & Casualty Company of New York brought this action of assumpsit against William Gilbane and Thomas F. Gilbane, copartners as William Gilbane & Bro., building contractors of Providence, R. I., to recover premiums alleged to be due on policies of casualty insurance issued by the company to the assured from August 1, 1897, to August 1, 1905. The premiums payable under such policies, when the policies were issued, were based upon an estimated pay roll for the ensuing year of the assured's employés who were covered by such insurance, and at the end of the policy year the policy provided for a statement for the year of the wages paid employés covered by the insurance. If the wages actually paid exceeded the estimate, the assured should pay the additional premium earned; if less than the estimate, the company would return to the assured the unearned premium pro rata. The company by this action claims that the assured's annual returns of wage expenditures were incorrect, and the purpose of this action was to recover such additional premiums from 1897 to 1905." "The assured's books of account were not so kept that the wages of insured and uninsured labor were separated." "The premiums were based on a classification of labor, and in the record the exact classification of the labor covered by these policies is set out at length. The assured made annual returns to the company of the wages of workmen upon whom they were supposed to be insured, and paid the company the premiums due on the basis of such returns." "The com-

163 F.—43

pany had never exercised its right to examine the assured's books until 1905, when an examination of these books was made, and the company, after this examination, brought in a claim of several thousand dollars for premiums alleged to be due, covering this period of years."

The case was submitted to the presiding judge, a jury being waived under the statute, and the judge rendered a decision for the plaintiff on which judgment was entered, and the defendants took out this writ of error. We will throughout designate the parties as designated in the Circuit Court, the plaintiffs in error as the defendants, and the defendant in error as the plaintiff.

The court made certain findings of fact and certain rulings of law; but, as is well settled, such rulings of law do not afford the basis of a writ of error, except so far as they relate to the admission or rejection of evidence, or otherwise concern the progress of the case. Beyond that, all the appellate court has to look at is the findings of fact. From these it determines whether the judgment was correct. It may, perhaps, also be added that, where the whole case comes up, and there is no evidence whatever to sustain the findings of fact, it may be that the appellate tribunal has power to set aside the judgment; but the extent to which that power may be exercised, and whether it can be exercised only where there is an absolute lack of proof, have never been explicitly decided by the Supreme Court. The rule, whatever it is, is appealed to by the plaintiff in error; but we have no occasion to analyze it.

The findings of fact were almost the equivalent of a general verdict, so that it is difficult to ascertain from the record how far we may go, and how far we are limited, in re-examining it, and this to such an extent that it may well be doubted whether we have any power whatever over the questions submitted to us. However all this may be, we are satisfied that the proceedings of the Circuit Court were not erroneous, and we reach this conclusion in any possible view of the case.

The first point taken by the plaintiff in error is to the effect that the Circuit Court was at fault in finding that the plaintiff had sustained the burden of proof. The facts in reference thereto are not clearly and consecutively stated on either side, but sufficient appears to make it plain that we cannot revise the judgment on account of this proposition. The proofs in behalf of the plaintiff consisted of the pay rolls and books of the defendant, the testimony of an accountant, sometimes called in the record an "auditor," who examined the books and pay rolls in behalf of the plaintiff, and who was examined at great length, indeed to such an extent that his testimony covers 50 printed pages. As already said, the defendant did not on its pay rolls or books apportion the labor so as to show definitely what parts of it classified as concerning the insured occupations. The result was, as we understand it, that, although there was no explicit apportionment in the pay rolls and books, the accountant found sufficient to show what were the gross amount of expenditures involved in connection with the different classes of occupations, including, we suppose, labor, material and profit, so that he, for the purpose of ascertaining the amounts represented in the insured occupations, adopted the method of dis-

tributing the expenditures for labor in proportion to the total amounts shown to have been expended on the various contracts. There was no evidence on the part of the defendant in any way diminishing the effect of such an apportionment. This apportionment was permitted by the court, and the court expressly found that the result sustained the burden of proof and was satisfactory to itself, and it is too apparent to need much explanation that, in the absence of any more definite proofs, the court was justified in supporting the position of the plaintiff in this respect. Certainly it cannot be maintained that the plaintiff was not entitled to any damages whatever because the amounts which should be justly returned to it could not be found with absolute accuracy. Such a claim can never be made except under extraordinary circumstances. Whatever proofs were offered by the plaintiff were subject to explanations, qualifications, and limitations by the defendants, so that there was no unusual danger of substantial injustice if the defendants availed themselves of the privileges to which they were thus entitled. Our observations apply particularly to this case, in which the defendants originally obligated themselves to furnish the plaintiff correct and exact details, and, if they willfully refused to furnish such details, or so conducted their business that they could not furnish them, no one can justly claim that the plaintiff should be deprived of all relief because such relief could be only approximate. The mass of the transactions involved was very great, so that whether or not the result was sufficiently approximate to form a just basis for a decision was necessarily, under the circumstances, a question of fact which it is outside of the jurisdiction of this court to determine.

The next objection of the plaintiffs in error, put in their own language, is:

"The court erred, as a matter of law, in finding specially that the returns made by the assured to the company of wage expenditure were untrue and entirely unreliable; there being no evidence in the record to support this special finding."

This is an immaterial proposition, because the issue was whether or not the defendants had made correct returns, and the finding of the court that they had not done so, which finding we have already determined we cannot revise, was the crucial thing, and the adjectives which it used were wholly immaterial.

The third proposition is as follows:

"The court erred in finding specially that the defendants' evidence that their books of account covered wage expenditures upon which they were not liable for premiums, other than those excluded by the auditor, is too vague and unreliable to be of probative force."

We are frank to say that we do not well understand this proposition. It may have relation to the fact that the plant of the assured consisted of a carpenter shop, factory, and yard, while the policies had relation to only a portion of the plant, and to a claim that, in the classification which the court made, it did not properly distinguish on that account. If we are correct in our understanding, this topic is covered by what we have said as to the alleged error first brought to our attention; but, if there is anything in this proposition which we do not correct-

ly comprehend, it must be referred to the fact that our rules require that a party complaining should enable us to put our fingers directly upon the portions of the record involved, and that we cannot be expected to search the numerous details in reference thereto for ourselves, which is what we have been left to do.

The next proposition is that the court erred in allowing a motion by the plaintiff to strike out certain evidence. It is not necessary that we should detail the facts about this. We have examined them carefully. They relate to a certain position taken at one time by the plaintiff favorable to the defendants, as to which there was subsequently a change by the agreement of both parties, so that the whole became immaterial.

The closing proposition of the plaintiffs in error we need not give, in detail, because it falls within the topic of classification by approximation which we have disposed of in connection with the alleged error first herein considered.

The judgment of the Circuit Court is affirmed, with interest, and the appellee recovers its costs of appeal.

NOTE.—The following is the opinion of Brown, District Judge, in the court below:

BROWN, District Judge. This is an action of assumpsit to recover additional premiums claimed to be due the plaintiff on policies of casualty insurance issued by the plaintiff to the defendants from 1897 to 1905. The premiums paid were based on estimated payrolls; each policy providing in effect that at the end of the year the actual wage expenditure should be determined, and that for any excess of the estimated wage expenditure over the actual expenditure the company should repay the unearned portion of the premium, or, if the actual wage expenditure exceeded the estimate, the insured should pay an additional premium.

To claims accruing prior to September 15, 1899, six years before the date of the writ, the defendants have pleaded the statute of limitations; and the plaintiff, in its replication, alleges that the defendants "did fraudulently, by actual misrepresentation, conceal from it the existence of the causes of such action," and "that it, said plaintiff, had no knowledge thereof, nor was the same by any means disclosed or discovered to it, until within six (6) years next before the commencement of its, the said plaintiff's, action."

### Findings.

(1) I find, as matter of fact, that the plaintiff's proof fails to sustain the allegations of its replication, and that the claims based upon policies marked Exhibits 22 to 31, inclusive, are barred by the statute of limitations. My reasons for this finding, and the conclusions of law applicable thereto, are as follows:

The policies marked Exhibits 22 to 31, inclusive, all expired more than six years before the date of the plaintiff's writ. To meet the plea of the statute of limitations the plaintiff must maintain its replication and show affirmatively that the defendants fraudulently, by actual misrepresentation, concealed the existence of a cause of action. By the provisions of its contracts the plaintiff had a full right to examine the defendants' books to determine the amount of actual wage expenditure. In making the contract the plaintiff did not rely solely upon returns to be made by the defendants, but secured to itself the right to fix the true amount of the premiums, and to correct the estimated amount of wages, by an independent inspection of the defendants' books.

It is not contended that the defendants' books concealed any of their actual expenditures. Can it be said that that is concealed which is immediately apparent when resort is had to a means of ascertainment provided

for by the contract? The causes of action arose from the fact that the wage expenditures exceeded the estimated payrolls. It is said that the false returns by the defendants lulled the plaintiff into inaction for more than six years. It is not enough, however, to show that the statements were material and false, to prove concealment upon this theory Ming v. Woolfolk, 116 U. S. 599, 6 Sup. Ct. 489, 29 L. Ed. 740. The plaintiff must also show that it relied upon the statements believing them to be true. There is no proof of reliance upon these statements, save the fact that the plaintiff made no examination of the books. But the plaintiff's conduct is quite as consistent with the idea that it did not deem it worth while to investigate the matter as with the idea that it relied implicitly upon the truth of the statements. Though, in making the contract, the plaintiff clearly did not choose to rely solely upon the defendants' statements, it contends that, in carrying out the contract, it did so. But all statements were made subject to the plaintiff's right to verify them by recourse to the books, and there is not a particle of evidence showing that the defendant made any attempt to prevent a verification.

It certainly cannot be said that the plaintiff's failure to verify the accounts was due to any act of concealment by the defendants. As the plaintiff always had the means of knowledge, its failure to discover a cause of action was due to not using ordinary means of information rather than to any affirmative concealment by the defendants. Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Bates v Preble, 151 U. S. 149, 160, 14 Sup. Ct. 277, 38 L. Ed. 106. "The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect be attributable to indifference or credulity" Andrus v. St. Louis Smelting Co., 130 U. S. 643, 647, 9 Sup. Ct. 645, 646, 32 L. Ed. 1054; Slaughter v. Gerson, 13 Wall. 379, 20 L. Ed. 627; 14 Am. & Eng. Enc. Law, 115, 117; 19 Am. & Eng. Enc. Law, 250. The above authorities show that section 7, c. 234, of the General Laws of Rhode Island, upon which the plaintiff's replication presumably is based, does not relieve the plaintiff from the necessity of using ordinary means of information available to him. This statute does not differ substantially from the statute before the Supreme Court in Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807.

Considering next the claims not barred by the statute of limitations:

(2) Upon the policies marked Exhibits 16 to 21, inclusive, I find that the defendants are indebted to the plaintiff for the sums claimed by the plaintiff and conceded by the defendant to be due.

(3) Upon the policies marked Exhibits 36 and 37, I find that the defendants are indebted to the plaintiff for the sums claimed. I am of the opinion that the plaintiff's evidence shows prima facie that all entries for wage expenditures during this period relate to insured occupations, and that the defendants have presented no sufficient evidence to show that any part of the wage expenditures during this period was for uninsured occupations.

(4) Upon policies marked Exhibits 1 to 15, inclusive, and Exhibits 32 to 35, inclusive, I find that the defendants are indebted to the plaintiff to the amounts shown in the plaintiff's bill of particulars and auditor's account.

I am of the opinion that the plaintiff's evidence shows prima facie that substantially all entries on the defendants' books during the periods of these policies relate to insured occupations. As the defendants did not apportion the labor expenditures to the various classes of insured occupations, the plaintiff was entitled to do so, and to adopt the method, shown in its account, of distributing expenditures for labor in proportion to the amounts shown on the defendants' books to have been expended for insured occupations. I am of the opinion that, upon the whole evidence, it appears beyond a reasonable doubt that the defendants' returns to the company are entirely unreliable. It was a clear requirement of the contracts that the defendants should keep an accurate account of the wage expenditures which were to be the basis for the premiums. The only accounts kept by the defendants are those upon which the auditor's account is based.

The defendants seek to explain the discrepancy between their books and their returns by saying that they were excused by Mr. Sheldon, a local agent,

from making classifications corresponding to the policies. But this is entirely insufficient to explain an omission to report under any classification by far the larger part of the actual wage expenditures. Aside from the fact that Mr. Sheldon had no power to waive a requirement of the contract, the evidence of conversations with him is insufficient to explain the discrepancy between the returns and the defendants' books.

A further explanation is that much of the expenditure was for wages which did not appertain to insured occupations. Several buildings were referred to, in which carpenters, masons, or others erected iron uprights and set steel and iron beams. It is apparent, however, that the fact that a building contains some iron does not exclude that building entirely, and that the wages of a carpenter, mason, or laborer who may occasionally do other work of an uninsured kind are not, therefore, to be wholly excluded. At most, there should be excluded only the wages during those hours in which he was engaged in an uninsured occupation; and that this was an important item there is no sufficient proof. On the contrary, the estimate, in one of the policies, of $300 for a wage expenditure in this class of work, tends to show that it bore a very small proportion to the whole amount of wage expenditures. The same may be said concerning demolition, done by carpenters in the course of repairs.

There was certain evidence as to steel construction of the tower of a fire station, and of work at Brown & Sharpe's, which, if made more definite, might have been a proper basis for some deductions from the amounts shown on the books. But the evidence as to these matters, as well as to all expenditures for noninsured occupations, was of the vaguest and most indefinite character. The vagueness and indefiniteness of the defense on these points, and especially as to comparatively recent matters concerning which experienced builders might easily have presented approximate figures, is an indication that more exact evidence would not assist the defendants. It is apparent that, if the defendants had desired to show the amount of uninsured work done, they could have done so in a much more definite manner; but it seems very clear that the result of such an attempt would have been simply a confession of the gross inaccuracy of the defendants' returns.

The plaintiff having established a prima facie case by introducing the accounts kept by the defendants, it was incumbent upon the defendants, if they desired to show that they had not kept the accounts as required by the contract, but had confused other maters therewith, to point out such matters specifically. They cannot be permitted to destroy the plaintiff's claim by vaguely impeaching in general terms accounts which it was their duty to keep for the benefit of the plaintiff, and, if there are specific items which properly should be excluded, it was the duty of the defendants to point them out specifically.

Should either party desire more specific findings, a request therefor may be filed within 30 days from the date of these findings.

Counsel may compute the amount due, and interest, in accordance with the above findings, and judgment will thereupon be entered for the plaintiff.