[Civ. No. 1342.    Third Appellate District.—July 13, 1915.]

FRANKFORT MARINE ACCIDENT AND PLATE GLASS INSURANCE COMPANY (a Corporation), Respondent, v. THE CALIFORNIA ARTISTIC METAL AND WIRE COMPANY (a Corporation), Appellant.

ACCIDENT INSURANCE — INDEMNIFICATION AGAINST INJURIES OF EMPLOYEES—PREMIUM BASED UPON COMPENSATION—EXAMINATION OF BOOKS OF INSURED—BILL OF DISCOVERY.—An action may be maintained by an accident insurance company, which has contracted to insure a private corporation against loss from liability for damages on account of bodily injuries accidentally suffered by any of the corporation's employees for a stated period, in consideration of the payment to the insurance company of a certain percentage of the

compensation paid to such employees, to compel the corporation, upon its refusal to permit the company to examine its books for the purpose of ascertaining the amount of such compensation, to bring its books into court for that purpose, on the theory that the contract created a sort of confidential relation between the parties, and imposed upon the defendant the duty of keeping an accurate record of the pay-roll to which the contract related.

ID.—KEEPING OF RECORD OF COMPENSATION PAID — OMISSION TO SIGN SCHEDULE SO PROVIDING—PART OF POLICY.—An omission to sign the schedule on the back of such a policy does not have the effect of making the provision therein for the keeping by the insured of an account of the compensation paid to its employees, of no binding force, where the policy itself has been accepted, signed by the plaintiff, and the schedule made an essential part thereof by express provision.

ID.—CONTRACTS—ACCEPTANCE OF PAPER SIGNED BY ONE PARTY—BINDING OF ACCEPTOR.—The receipt and acceptance by one party of a paper signed by the other party, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper.

ID.—CLASSES OF EMPLOYEES COVERED BY POLICY—AMBIGUITY—FAILURE OF INSURED TO KEEP SEPARATE ACCOUNTS—EFFECT OF.—Where such a policy of insurance is ambiguous as to whether it was intended thereby that the compensation paid was to embrace those employees only who were engaged in "outside" work, or to include those employed on the "inside" as well, and the insured fails to keep a separate account of the payments made to each class of employees, which thereby renders it impossible to determine how much has been paid to each, such conduct amounts to a construction by the insured that the policy is to cover both classes.

ID.—LIABILITY INDEPENDENT OF AMBIGUITY IN POLICY.—The omission of the insured to keep separate accounts of the amount of compensation paid to its two classes of work and thus making it impossible to determine what was paid to each, renders the insured liable to the company for premiums based upon the compensation paid to all employees, even though the policy be construed as limited in its scope to but one class of employees.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Coogan & O'Connor, for Appellant.

Walter K. Tuller, for Respondent.

HART, J.—This is a suit for an accounting or, more properly, for discovery and for judgment for the amount so found to be due the plaintiff from the defendant.

An interlocutory decree compelling an accounting was made and the same had and thereupon judgment rendered and entered in favor of the plaintiff for the sum of two thousand six hundred dollars.

The defendant moved for a new trial and the same ordered denied, and it presents these appeals from the judgment and said order.

On the seventeenth day of September, 1907, the plaintiff, a corporation, organized and existing under the laws of Germany, and doing business in the state of California under and by virtue of the laws of said state, and the defendant, a corporation, organized and existing under the laws of this state, entered into two certain contracts, which are declared upon in two separate counts. By the terms of the contract constituting the first cause of action set out in the complaint, the plaintiff agreed to insure the defendant ''against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered by any employee or employees of defendant while on duty at the places and in the occupations specified in said contract during the period of one year from and after September 17th, 1907.'' The compensation to be paid by the defendant was to be a sum equal to two per cent upon an estimated compensation of two thousand five hundred dollars, and the estimated premium, on said contract, amounted, therefore, to the sum of fifty dollars, which was paid by the defendant.

By the contract declared upon in the second count of the complaint, the defendant promised to pay the plaintiff a sum equal to one per cent upon an estimated compensation of two thousand five hundred dollars as indemnity against loss from ''common law or statutory liability on account of bodily injuries, fatal or nonfatal, accidentally suffered, within the period of said policy or contract of insurance, by any person or persons not employed by the defendant at or about any of the work of the defendant described in the schedule given on the back of this policy, in and during the continuance of the work described in the said schedule.'' The amount of the premium on said contract was, obviously, twenty-five dollars, the defendant having paid the same.

Both policies cover the estimated pay-roll for all employees inclusive of officers and office employees.

Each of said contracts contains the following provision: "If the compensation actually paid exceeds the sum stated in the schedule given on the back of this policy, the assured shall pay the additional premium earned; if less than the sum stated, the company (meaning the plaintiff) will return to the assured the unearned premium *pro rata*," the "company," however, being authorized to retain in any event, as the fixed minimum earned premium on the two per cent policy, the sum of $33.35 and on the one per cent policy the sum of $16.65.

In the schedule of warranties on the backs of the policies it is provided that the work covered by the indemnity was that which was to be performed by the employees of the defendant "anywhere in California, excepting at 349–365 Seventh Street, inclusive, extending through to Sherman Street, San Francisco," and the character of said work is in said schedule described as follows: "All work connected with the erection of railings, gates, elevator inclosures, cabs, stairs, show windows, store fronts, fixtures, folding gates, patented suspended ceilings, wire lath, grill work, floors and partitions, gas fixtures and fire escapes."

The complaint alleges that, since September 17, 1908, the "plaintiff has frequently demanded from defendant an opportunity to examine its books so far as they relate to said compensation paid as aforesaid, but that defendant has ever since refused and does still refuse to allow such examination of its said books."

It is further alleged that nothing has been paid by or on behalf of the defendant on account of said contracts, excepting only the sums of fifty dollars and twenty-five dollars, respectively; that the "plaintiff is informed and verily believes, and therefore alleges, that, during the year aforesaid, defendant paid to his said employees as compensation, sums far in excess of twenty-five hundred dollars; that plaintiff does not know the extent of this excess and has no means of ascertaining the same except through the intervention of this honorable court"; that the plaintiff "has no plain speedy and adequate remedy, or plain or speedy or adequate remedy, at law."

The prayer does not specifically ask for an accounting, but petitions the court that the defendant be compelled "to at-

tend before it, bringing all such books and documents as will enable this court to determine the total sum paid by it as compensation to its employees during said year . . . and by such other means as may be adequate and proper this court to determine that sum, and that it do render a judgment in favor of plaintiff . . . for a sum equal to three per cent of said sum, less only the sum of $75,'' etc.

The court found, among other facts, that the two policies declared upon called for two and one per cent, respectively, of the total of all moneys paid by the defendant to its employees, including officers and office employees, as compensation during the year from and after September, 1907. It is further found that the defendant paid to its employees ''in and about the business'' covered by the said policies during the year mentioned the sum of seventy-four thousand nine hundred and ninety-nine dollars and that the plaintiff is entitled to a sum equal to two per cent of this amount upon the policy counted upon in the first count of the complaint, less the sum of fifty dollars, paid on account thereof, and one per cent of said amount on the policy declared upon in the second count of the complaint, less the sum of twenty-five dollars paid thereon.

The court further found that the said contracts of insurance provided that the plaintiff should have the right at all reasonable times to examine the defendant's books so far as they related to the compensation paid by it to its employees during said year, and that, since September, 1908, ''at numerous reasonable times, plaintiff has demanded from defendant an opportunity to examine its books in so far as they relate to the compensation paid,'' but that the defendant has on all such occasions refused to allow such examination or any examination.''

The defendant first contends that the complaint does not disclose a case for an accounting, and that the plaintiff is afforded a complete and adequate remedy in the ordinary course of law.

Professor Pomeroy cites three instances in which the legal remedies are held inadequate, and, therefore, a suit in equity proper. They are as follows: 1. Where there are mutual accounts between the plaintiff and the defendant—that is, where each of two parties has received and paid on account of the other; 2. Where the accounts are all on one side, but

there are circumstances of great complication, or difficulties in the way of adequate relief at law; 3. Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account. (Pomeroy's Equity Jurisprudence, 3d ed., sec. 1421.)

In *Coward* v. *Clanton,* 122 Cal. 451, 453, 454, [55 Pac. 147], however, Judge Temple said: ''I do not understand the suggestion that the court has no jurisdiction to compel an accounting unless a partnership was created. If plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done. (*San Pedro etc. Co.* v. *Reynolds,* 121 Cal. 74, [53 Pac. 410].) Whether the facts would have given jurisdiction to a court of equity is of no consequence.'' (See *Fox* v. *Hall,* 164 Cal. 287, 290, [128 Pac. 749]; *Sumner* v. *Nevin,* 4 Cal. App. 347, 351, [87 Pac. 1105].) In the last cited case, the late Judge Allen, of the court of appeal of the second district, said: ''That the right to an accounting is to be determined from the situation of the parties with reference to the accounts, and not because of any particular relation one bears to the other, appears to be the doctrine of *Coward* v. *Clanton,* 122 Cal. 451, [55 Pac. 147].''

The case here is not one of mutual accounts between the parties, nor can we say that the account involved is one as to which there exist circumstances ''of great complication.'' But we think we can say, without a strained construction of the contracts, that they, in at least one aspect thereof, created a sort of confidential relation between the parties. The defendant was charged by the contracts with the obligation of performing an act which involved the vital rights acquired by the plaintiff thereunder, to wit: Keeping and preserving an accurate record of the pay-roll to which the contracts related. Without the faithful performance of its duty by the defendant, the plaintiff would perhaps be wholly deprived of its rights. The defendant, therefore, became a party to the contracts in two different aspects, viz.: 1. As one deriving a direct benefit by reason thereof from the plaintiff; 2. As an agent of the plaintiff to see that its rights were duly and properly protected and conserved, and in the latter aspect the very nature of the duty to be performed by it created between the two parties at least a *quasi* confidential relation.

The case of *Darrah* v. *Boyce*, 62 Mich. 486, [29 N. W. 105]. applied a principle to facts not altogether unlike those of this case which we think ought to be the ruling principle here. In that case the plaintiff and the defendant had entered into a convention whereby they were to share the profits of a certain business, and where, the defendant having refused to account to the plaintiff for the profits and an action having been brought by the plaintiff for an accounting, it was contended that such an action would not lie. Replying to that contention the court said: "It is true the relation between the parties was not that of partners, but the trust reposed in and the business to be carried on by the defendant, and the accounting he was required to make, were fully equal to those of a partnership and quite as confidential. . . . He was in possession of all the books and accounts relating to the business, and refused to give any account of sales, or of the place where made, or the amounts received on sales. Some sort of discovery is certainly necessary, and while, to some extent, it may be obtained in a court of law, perfect and complete disclosure as to all these matters may be obtained in a court of equity. In this class of cases the form of the action should not be made to depend entirely upon the fact that the complainant has a remedy at law, but whether or not such remedy is adequate, and will do full justice between the parties. Technicalities should never be allowed to control in such cases, where the effect will be to impair or destroy substantial rights, but that form of action should be allowed and adopted which will best accomplish the ends of justice. These views are carefully maintained in this court in *Cochrane* v. *Adams*, 50 Mich. 17, [14 N. W. 681]; *Merritt* v. *Dickey*, 38 Mich. 44; *Ramsdell* v. *Millerd*, Har. (Mich.) 373; *Heath* v. *Waters*, 40 Mich. 457; *Flanders* v. *Chamberlain*, 24 Mich. 314; also in Pomeroy's Equity Jurisprudence, sec. 1412, note 1, and case cited; *Foley* v. *Hill*, 2 H. L. Cas. 28; *Moxon* v. *Bright*, 4 Ch. App. 292; *Marvin* v. *Brooks*, 94 N. Y. 71." (See, also, *Garr* v. *Redman*, 6 Cal. 575.)

In this case, however, discovery was absolutely necessary to determine the rights of the parties, and this is really about all that the complaint called for, so far as the auxiliary jurisdiction of equity was invoked, and about all that the proceeding involving an examination of the defendant's books amounted

to. The case here, therefore, comes squarely within the doctrine of the California cases above cited.

The next point discussed in the briefs is whether the policies covered the compensation paid to those employees only who were engaged in work outside the defendant's establishment or offices, or all its employees, including those employed inside as well as those employed outside.

The trial court, by its findings and decision, construed the policies so that they embrace the compensation paid by the defendant to all its employees—both those employed inside and those employed outside.

The policies in that regard are somewhat ambiguous, and, while the writer is of the opinion that the language thereof, upon its face, might reasonably be capable of the construction that it was intended that compensation paid by the defendant to the inside employees was to be excluded from the operation thereof, we are, nevertheless, after careful consideration of this case, persuaded to the opinion: 1. That, by failing, as will later be shown was the fact, to keep a separate account of the payments to outside employees as compensation for the insurance year, the defendant itself so construed or should be held thus to have so construed the policies as to embrace within the operation thereof its entire pay-roll, consisting of compensation paid to both inside and outside employees; and, 2. That if this be not sound as a legal proposition and the policies may properly and should be so construed as to limit their scope to compensation paid to outside employees only, then, nevertheless, the defendant having failed to discharge its duty of keeping a separate account of compensation so paid and thus made it impossible to determine what proportion such compensation bore to the total compensation paid to all its employees during said year, the court was justified upon principles applicable to such circumstances in concluding and deciding that the basis of the amount to which the plaintiff is entitled as premiums on said policies is the compensation paid to all its employees, inside as well as outside. And thus we are now brought to the consideration of the propositions thus stated.

Before taking them up, however, we should first dispose of another point made by the defendant.

It is pointed out that the schedules on the backs of the policies were not signed either by the plaintiff or the defend-

ant, and it is, therefor, contended that the provision therein for the keeping by the defendant of an account of the compensation paid to its employees or of a separate account thereof paid to those employed on the outside has no binding force. It is true that the schedules of warranties are not signed by either of the parties. The policy or contract itself is, however, signed by the plaintiff through one of its authorized agents, and the schedule is an essential part thereof, and, indeed, is made so by an express provision of the policy itself. It is a settled rule that the receipt and acceptance by one party of a paper signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper. (*Fidelity etc. Co.* v. *Fresno Flume etc. Co.,* 161 Cal. 466, 473, [37 L. R. A. (N. S.) 322, 119 Pac. 646]; 9 Cyc. 260, 391; Civ. Code, sec. 1589; *Watkins* v. *Rymill,* L. R., 10 Q. B. D. 178, 188.)

Returning now to the question stated previously to the taking up of the point last considered, attention should first be called to the fact that each of the contracts involved in this suit contains the following provision, which appears in the schedules immediately following the enumeration therein of the classes of work to which they relate: ''Complete and accurate pay-roll records will be kept corresponding to the classifications above described.''

By said provision it became the duty of the defendant to keep a record of the amount of compensation, paid by it to outside employees during the policy year. Indeed, from the very nature of the agreement between the parties, or from the very condition determinative of the amount of the premiums to be paid, it seems to us that the obligation to keep an accurate pay-roll applicable to the classes of work enumerated in the contracts and which was to constitute the basis of the premiums to be paid would have rested upon the defendant even in the absence of an express requirement in the contracts that it should perform that act. However, as shown, the contracts themselves by express provision clearly require the defendant to discharge that obligation and no one will gainsay the binding force of that covenant upon it.

At the trial, the plaintiff introduced proof of the issuance by it of the pleaded policies to the defendant. It also called to the witness stand the secretary of the defendant, and he

testified that the books of the defendant, while showing the total amount paid to both inside and outside employees, failed to show the respective amounts paid to the outside and the inside employees. In other words, the pay-rolls of the two classes of employees were not segregated and kept separately and apart from each other. "From an inspection of the books," this witness continued to say, "it would be impossible for me to determine how much had been paid out in one place and how much in another, and I don't think anybody else could."

Upon the foregoing testimony, the plaintiff rested its case, and thereupon the defendant moved for a nonsuit, which should have been granted, since there was a complete failure by it to show that the defendant expended during said year an amount in payment of its employees in excess of the sum of two thousand five hundred dollars. But the error was cured by the defendant itself by proceeding with its case and proving by the same witness—secretary of the defendant—that the total amount paid by it as compensation to its employees for the year covered by the policies was the sum of seventy-five thousand dollars or thereabouts. That witness, further testifying for the defendant, said that "the time books of the defendant do not indicate the pay-roll for work done outside the shop during this period. They include all time spent by our mechanics, whether inside or outside the shop. As a matter of fact, some of the time was outside. There is no book or any record kept by the corporation which shows what proportion of our pay-roll was for work outside of the shop. The total pay-roll inside and outside for the period embraced in the policies of insurance was about something over $75,000—between $75,000 and $76,000." The witness further stated that the only way by which he could determine the amount that was expended for labor on the ouside would be from an estimate, but that there "would be no data for such an estimate, except my general recollection of what it has been. . . . As far as I know, there would not be any way of determining by examination of the books, or by questioning the bookkeeper, the exact amount that was expended for labor outside of the shop, for this reason; that we employ mechanics and they make their own time cards out, showing the amount of time expended on a certain job, and each job has a number. . . . Altogether,

I presume we employ the year around in and out of the shop, say 50 men. . . . Presuming that counsel for plaintiff should summon these fifty men, in my opinion they would not be able to testify what services they performed on the outside during the period of the insurance. They would probably know less than I would about it, from my information. . . . I could give my estimate, based upon what we figure jobs, and then estimating liberally, I know about what I allow for the outside work.'' The witness was then asked by the attorney for the defendant what, in his opinion, the proportion of the pay-roll was for work done outside the shop, but the court sustained an objection to the question on the ground ''that this is not a proper case for any mere estimate or opinion.''

It was further shown that, shortly after the expiration of the year covered by the policies, the plaintiff in writing demanded of the defendant a statement of the wages or compensation paid to its employees during said year and that its auditor be privileged to check the same ''in accordance with Clause E, Special Agreement, in the policy issued to you.'' The defendant refused or failed to furnish such statement. It was further made to appear that the plaintiff demanded from the defendant permission to inspect its books in so far as they related to the compensation paid its employees, during said year, and that said demand was refused.

We have now presented a summarized statement of all the testimony introduced at the trial, and it will be noted therefrom that, as above stated, no effort was made or steps taken by the defendant to segregate and keep a separate account of each of the two classes of pay-rolls, but that both were commingled or kept in such manner as to render it absolutely impossible to determine how much was paid during the year to the inside and how much was paid to the outside employees. Having knowledge, as in the very nature of the case it certainly did, that the duty rested wholly upon it to keep and preserve an accurate record of the compensation which was to constitute the basis of the amount of the plaintiff's premiums, can it be doubted that, if there be ambiguity in the policies as to their scope, the conduct of the defendant as to the manner of keeping the record of the compensation paid by it during the insurance year, amounted to a construction by it of the policies and their scope and thus there was re-

moved any ambiguity appearing upon the face of those instruments? Again, if the understanding was that the policies were to apply to that part only of the pay-roll affecting outside employees, is it conceivable that the defendant, realizing, as certainly it must have realized, that it was a matter of supreme importance to it to maintain separate records of the two classes of pay-rolls, would not have done so? The consideration suggested by the foregoing interrogatories far outweigh the statement of the defendant's secretary when testifying that the agreement was that the basis of the amount to be paid to the plaintiff as premiums was the compensation to be paid to the outside employees.

But, assuming that the position thus taken is not supportable, still, we think, as before declared, that the defendant should, under the evidence and upon sound equitable principles, be held bound, as determinative of the amount to which the plaintiff is entitled as premiums, to the total compensation paid during the year to both inside and outside employees.

In a sense, as before suggested, the defendant, by the provision requiring it to keep an accurate account of the pay-roll to which the policies related was to that extent impressed with the character of agent of the plaintiff. It imposed upon the defendant the performance of a certain duty to the plaintiff involving the latter's rights under the contracts. At any rate, the defendant, as shown, was the only party to the contract authorized to keep a record of its pay-roll for the purposes of the contracts. Indeed, as is plainly manifest, it was the only one in a position to do so. The plaintiff was not authorized to perform that duty and had it been it would have been impracticable for it to have done so, or, indeed, as was the case when ultimately it sought to inspect the defendant's books, it might have been met with a refusal of the privilege of performing that duty. It was, therefore, up to the defendant to discover to the plaintiff the pay-roll affected by the contracts. And if, as the defendant contends, the compensation paid to outside employees was intended to constitute the exclusive basis of the amount to be paid to the plaintiff as premiums, the burden was upon the defendant to show what proportion of the total amount paid as compensation to all its employees was paid to the inside employees. (*Fox* v. *Hall*, 161 Cal. 287, [128 Pac. 749]; *Thatcher* v. *Hayes*,

54 Mich. 184, [19 N. W. 946], opinion by Chief Justice Cooley; *Dettering* v. *Nordstrom,* 148 Fed. 81, [78 C. C. A. 157] ; *Choctaw O. & G. R.* v. *Sittel,* 21 Okl. 695, [97 Pac. 363] ; *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74, [53 Pac. 410], Mechem on Agency, sec. 1314.)  This proposition follows from the rule, which we think applies to this case, that where offsets to an account upon which a party sues exist in favor of the defendant, the burden is upon the latter at the trial to specifically point out and prove such offsets.  Or, as has been elsewhere said, so it is correct to say here: ''The plaintiff having established a *prima facie* case by introducing the account kept by the defendants, it was incumbent upon the defendants, if they desired to show that they had not kept the accounts as required by the contract, but had confused other matters therewith, to point out such matters specifically. They cannot be permitted to destroy the plaintiff's claim by vaguely impeaching in general terms accounts which it was their duty to keep for the benefit of the plaintiff, and, if there are specific items which properly should be excluded, it was the duty of the defendants to point them out specifically.''  (*Gilbane* v. *Fidelity & Casualty Co.,* 163 Fed. 673, 678, 90 C. C. A. 265.)

At the trial, no attempt or offer was made by the defendant in a competent way, as, indeed, by reason of the defendant's own dereliction of an obligation of the contract equally vital to it as to the rights of the plaintiff, none could be made, to show any offsets which it might have been entitled to have allowed against the account which the evidence disclosed. In other words, it made no attempt in a legal manner to show how much of the total compensation paid by it to its employees during the year covered by the policies was paid to the inside employees, which would have been, under its theory of the scope of the contracts, a proper credit in its favor on the account.  In fact, as seen, the defendant's secretary testified that such a showing could only be made, under the circumstances, through an ''estimate,'' based, however, upon no available data and which would have amounted to mere conjecture.  And, that the trial court was right in its ruling refusing to allow the fact to be shown by such method cannot for an instant be doubted; for such a fact does not, obviously, fall within the range of those matters proof of which through expert testimony is permissible, nor is it one

the existence of which can be established by mere guess, surmise, or conjecture. If the defendant had been able to show some data which might have formed a substantial basis for an approximation of the apportionment between the two classes of employees of the total compensation paid to all its employees, then the rule invoked by it and announced and approved in *Gilbane* v. *Fidelity & Casualty Co.*, 163 Fed. 673, [90 C. C. A. 265], would doubtless govern here. But no such showing was made.

If it be true that the judgment in this action imposes upon the defendant a severer hardship or a greater burden than that contemplated by the contracts, the answer plainly is that its misfortune in that regard is only the natural and inevitable result of its own wrong. Merely because, perchance, the defendant is not able by reason of its own remissness in the transaction to present proof disclosing that the account rendered by it of the record of its pay-roll does not constitute the true basis, under the contracts, for determining the amount in which it is indebted to the plaintiff constitutes no just reason for holding that the plaintiff should be wholly deprived, as might be the case, of its rights under the contracts.

There is a maxim of jurisprudence which has been expressly adopted in the system of this state that "he who consents to an act is not wronged (in contemplation of law, of course) by it." (Civ. Code, sec. 3515.) There is another salutary doctrine which forbids a party taking advantage of his own wrong or of being permitted to enjoy the fruits of his own wrongful acts. These principles, it seems to us, concern themselves with just such cases as this, and should be applied thereto with all their force. In thus expressing ourselves, we have in mind not only the fact that the defendant, if in reality the contracts related only to the compensation paid to its outside employees, failed to do its duty in keeping a proper record of the compensation so paid, but also the fact that it refused to permit the plaintiff to have access to its books relating to such compensation so that thus it might possibly ascertain and determine the fact upon which its vital rights under the contracts rested.

No question can arise here as to the sufficiency of the findings to support the judgment under any of the theories of the case upon which it is herein considered. The court, as

seen, found. that the pleaded policies were issued and the terms thereof subscribed to by both parties and that the amount paid out by the defendant as compensation to its employees during the period specified in the policies exceeded the estimated compensation specified in the contracts. These findings are manifestly sufficient to support the judgment not only upon the theory that the compensation contemplated by the contracts consisted of the total amounts paid to all the employees, but also upon the theory that, while the policies limited their operation to the compensation paid to outside employees, the plaintiff was entitled to recover on the basis of the compensation paid to all employees because it was impossible, solely and wholly through the defendant's own inexcusable negligence in the keeping of a proper account, to show the respective proportions of the total amount so paid which were paid to the two classes of employees named, whereby only could it be determined to what extent the defendant was entitled to be allowed a credit on and a corres-ponding reduction in the total amount discovered by the ac-count proved.

We have neither been shown nor found any just reason for interfering with the conclusion arrived at in this case by the trial court, and, accordingly, the judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 12, 1915, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a rehearing of this case, it is deemed proper to say, in response to the renewed contention that the cause should be sent back for a new trial for the alleged error of the trial court in refusing to allow the defendant to prove by what we conceive to be mere guesswork the proportion the compensation paid to the outside employees bore to the total amount paid to all employees: 1. That we have been shown no reason and can conceive of none for withdrawing from the position, taken in our former opinion, that that fact is not of that class of facts which it is competent to establish through the instrumentality of expert

testimony.  It is obviously no more the subject of expert tes-
timony than would be the question, in an action on an ac-
count, as to the amount of the payments claimed by the
defendant to have been made on said account.  2. That the
proposal to prove the fact by the "general recollection" of
an officer of the defendant, after the latter had said that there
were available to him no data upon which an estimate could
be made, was properly rejected by the court as involving
proof incompetent for that purpose.

We do not hold that a witness, in some instances, may not
properly be permitted to give his "*best* recollection" as to the
existence or nonexistence of a particular fact relevant and
material to some ultimate issue, in cases where the issue thus
sought to be proved is not required to depend wholly for its
establishment upon that character of proof and where there
exists possible opportunity for the party against whom it is
received to offer adversary proof upon the point to which it
is addressed.  In the case at bar, however, the ultimate ques-
tion to be affected by the proposed proof, based entirely upon
the "*general recollection*" of the witness, is the most vital in
the case to the plaintiff.  And, it is to be said, equally vital
to the defendant; yet readily it can be perceived how impos-
sible it would have been for the plaintiff to have met or at-
tempted to overcome the force and the possible effect of
testimony of so dubious an evidentiary nature and how easily
thus its rights might be wholly destroyed.  Through no fault
of its own, the plaintiff was wholly without means of know-
ing, or the ability even to approximate (not even enjoying
the doubtful advantage of general or the best recollection)
how much of the total compensation paid to its employees
by the defendant was received by the "outside employees,"
and, manifestly, had the defendant been allowed to make
proof of that fact by a witness upon his mere "general recol-
lection" thereof, based upon no data of a substantial char-
acter, the plaintiff's rights would have been placed at the
mercy of testimony possessing little or no probative value and
as to which an adversary showing was wholly impossible.

As stated in our original opinion, if the defendant must
unjustly suffer because of the ruling of the court below fore-
closing proof of an important fact by means of such testi-
mony, surely it cannot be unconscious of the fact that such

result, always when thus brought about to be deprecated in any case, is only the culmination of its own unpardonable carelessness or negligence.

The petition for a rehearing is denied.