[L. A. No. 10389. In Bank.—September 20, 1928.]

THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, etc., Respondent, v. HENRIETTA JOHNSON et al., Appellants.

A. L. Hubbell and Honnold & Hubbell for Appellants.

George H. Moore, Hubert Starr and Dorsey Whitelaw for Respondent.

THE COURT.—At the time this action was before the district court of appeal, second district, second division, each of the three justices thereof prepared and filed separate opinions, in one of which the justice writing the same dissented from the conclusion reached by his two associates in the respective opinions prepared by them. It was largely due to this diversity of sentiment among the members of the district court of appeal that we granted the petition for a hearing in this court. After a more thorough examination and study of the several opinions rendered by the members of the district court of appeal and the law applicable to the questions involved herein, we have arrived at the conclusion that the opinion written by Mr. Justice Craig of said district court of appeal coincides with the views of this court, and we hereby adopt the same as the opinion of this court. Said opinion is as follows:

"The transaction out of which this action arose is one of employer's liability insurance. The suit is for unpaid premium thereon. The counts are contained in the complaint. The first count alleges that the defendants became indebted to the plaintiff in the sum of $1,113.77 on account of premiums earned on a written policy of workmen's compensation insurance covering a period of one year, of which only $591.89 had been paid, and $521.88 was due and unpaid. The second count alleges an account stated upon the same transaction by which the defendants agreed to pay the plaintiff $1,113.77, and had paid $591.89. From the bill of exceptions it appears that at the trial plaintiff introduced evidence to show that it issued a policy as alleged, that the work covered by it as stated in the contract was 'Truckmen, general trucking (Not otherwise classified), classification No.

7208, premium rate $3.77. Payroll to include all such employees as drivers, drivers' helpers, chauffeurs, chauffeurs' helpers, stablemen, blacksmiths, repairmen and riggers, excluding only clerical office employees and storage warehouse employees.'' Also that the place stipulated as that where the work was to be done was 'Calexico, Imperial county, California.' Section 'H' of the policy is one over which the controversy principally arose. It reads, in part, as follows: 'The premium is based upon the entire remuneration earned during the policy period by all employees of the assured, and all employees of any contractor or subcontractor of the assured, engaged in the trade, business or work described in said declarations. . . . The assured shall keep complete and accurate record of the remuneration earned by employees classified according to the kind of work performed, and shall cause contractors and subcontractors to do likewise by inserting in all contract agreements entered into a provision requiring such records to be kept for examination by the assured and the corporation. Failure to keep such records on the part of the assured shall entitle the corporation to apply to the entire remuneration earned the premium rate applicable to the most hazardous work performed.'

"Evidence was introduced sufficiently establishing the account stated as alleged in the complaint, by which the defendants agreed to pay the plaintiff's bill of $1,021.79, and that of this only $591.89 was paid. A *prima facie* case was also proved on the other count.

"Both sides rely upon *Frankfort Marine etc. Ins. Co.* v. *California etc. Wire Co.*, 28 Cal. App. 74 [151 Pac. 176], to sustain their respective contentions as to the law bearing upon the issues presented by the first count. The facts of the case are similar to those in the one before us. The policy there construed contained a provision similar to section 'H' of the contract here presented, but counsel construe the language of the opinion differently.

"It was sought by testimony of the secretary of the defendant company to segregate the payroll, but the evidence offered was simply the 'general recollection' of the witness, and this was founded upon no substantial data. The ruling of the trial court refusing admission of such testimony was sustained. The principles upon which the decision was based are, we think, applicable here. They are most clearly ex-

pressed in the opinion of the court in denying the application for rehearing. One reason which is indicated as sufficient to uphold the ruling of the superior court is: 'That the proposal to prove the fact by the "general recollection" of an officer of the defendant, after the latter had said that there were available to him no data upon which an estimate could be made, was properly rejected by the court as involving proof incompetent for that purpose.

" 'We do not hold that a witness, in some instances, may not properly be permitted to give his "best recollection" as to the existence or nonexistence of a particular fact relevant and material to some ultimate issue, in cases where the issue thus sought to be proved is not required to depend wholly for its establishment upon that character of proof and where there exists possible opportunity for the party against whom it is received to offer adversary proof upon the point to which it is addressed. In the case at bar, however, the ultimate question to be affected by the proposed proof, based entirely upon the *"general recollection"* of the witness, is the most vital in the case to the plaintiff. And it is to be said, equally vital to the defendant; yet readily it can be perceived how impossible it would have been for the plaintiff to have met or attempted to overcome the force and the possible effect of testimony of so dubious an evidentiary nature and how easily thus its rights might be wholly destroyed. . Through no fault of its own, the plaintiff was wholly without means of knowing, or the ability even to approximate (not even enjoying the doubtful advantage of general or the best recollection) how much of the total compensation paid to its employees by the defendant was received by the "outside employees," and, manifestly, had the defendant been allowed to make proof of that fact by a witness upon his mere "general recollection" thereof, based upon no data of a substantial character, the plaintiff's rights would have been placed at the mercy of testimony possessing little or no probative value and as to which an adversary showing was wholly impossible.'

"This quotation is most apt in its application to the facts of the instant case. While it is claimed here that the rejected testimony was the definite recollection of the witness as to employment of particular employees, it was based upon no 'substantial data,' and in fact upon no data of the char-

acter required by the contract of the parties. In the Frankfort case the books included a record of all time spent by the employees whether within or without the shop. The issue was upon the segregation on that basis, and the books failed to supply the information. In the instant case it appears that the books are in identically the same condition. They show all of the time spent, but do not segregate it as to the character of work done or place of its performance. As to the lack, all data capable of being used for segregation purposes, the situations are the same, in the absence of such data stipulated by the parties as thus necessary, it is of no moment that here a witness stated that he knew the employees, nor would it meet the stipulations agreed upon by the parties themselves as to data required to show such segregation if he could tell what each did and where each worked. As in the opinion quoted, such testimony would have been determinative of the most vital issue in the case. The insurer would have been utterly at a loss to have secured or produced adversary proof. The insured had full opportunity to have kept and preserved competent evidence, and its failure to do so was not only neglect of its own interests, but a clear disregard and dereliction of a duty owed the insurer in a confidential relation of agency for the latter; and, finally, the injury which the appellants may sustain by being refused permission to use the evidence offered is the natural result of their own neglect, and to permit them now to foreclose the respondent from its day in court (which would be the practical result of allowing the issues in question to be established by the mere unsubstantiated recollection of the witness) would violate the maxim which forbids a party taking advantage of his own wrongful act.

"Appellants further contend that there was testimony to the effect that $2,500 of the payroll was paid to warehousemen and that their work is not covered by the policy. The most that can be said to sustain this claim is that some conflict in the testimony appears to exist, but the only evidence to be found in the bill of exceptions indicating that any of the payroll covered work of warehousemen is the statement of the witness Hill, based merely upon his general recollection, as to the competency of which evidence we have stated our views.

"Finally, appellants make the contention that a part of the payroll as reported by respondent's auditor was for work in Mexicali, whereas the policy provided that it should cover work only in Calexico, Imperial county, California. The only place where the word 'Mexicali' occurs is in a statement rendered by the company to defendants which was introduced in evidence as a part of the proof of the alleged account stated. The bill of exceptions does not contain the entire statement. It merely quotes the summary of which all that is germane to the question here under consideration is, 'Total $31,547.36. Mexicali $1,093.88.' With no more of the context than this from which to judge, it would be mere speculation to conclude that the word 'Mexicali' as here used indicates that any work was performed outside of Calexico. On the other hand, the bill of exceptions contains the statement, which of course we must accept as true, that: 'On the trial evidence was introduced by plaintiff in support of all findings of fact made by the court.' One of the findings to which reference is made is that all of the allegations in paragraph three of the plaintiff's first cause of action are true. These allegations contained one to the effect that the defendants became indebted to the plaintiff in this transaction in the sum of $1,113.77, which, according to the statement above mentioned, rendered by the plaintiff, includes the item: 'Mexicali, $1,093.88'; hence the necessary inference that the work was done in Calexico. Upon the meager information contained in the bill of exceptions bearing upon this point we are not in a position to say that the trial court's finding in this behalf is unsupported by the evidence.

"In view of our decision concerning the issues presented in the first count, it is unnecessary to pass upon appellants' contention concerning the court's rulings to do with the alleged account stated as set forth in the second cause of action."

The judgment is affirmed.